# Southern Railway Company *v.* Proctor.

## *Damage to Live Stock.*

(Decided Dec. 19, 1911.   Rehearing denied Jan. 30, 1912.
57 South. 513.)

1. *Carriers; Live Stock; Injury; Complaint.*—A complaint alleging that a car load of cattle was shipped by defendant as a common carrier, for hire for the plaintiff sufficiently charges that the defendant undertook for hire as a common carrier the carriage of the property for the plaintiff as a person interested in the goods shipped.

2. *Same.*—A complaint which alleges that plaintiff delivered to defendant as a common carrier a carload of cattle to be shipped for hire, charges sufficiently that the defendant as a common carrier, assumed the duties of that relation to the plaintiff as a person interested in the cattle shipped.

3. *Same.*—Under section 5382, Form 15, a complaint alleging that the defendant failed to deliver the cattle entrusted to it for carriage by the consignor, within a reasonable time, and that by reason of such delay, the plaintiff was damaged, sufficiently follows the statutory form, and is sufficient.

4. *Same; Actions; Who May Sue.*—The presumption that the consignee has title is merely prima facie, and a consignor, upon proper showing, may maintain an action for damages for the failure of a carrier to deliver goods within a reasonable time, although they are consigned to another.

5. *Same; Injury; Evidence.*—Where the action was for injury to cattle delivered to a carrier for shipment, caused by an unreasonable delay in delivery, the plaintiff may show that the cattle were injured by being deprived of food and water for a long time.

6. *Same.*—Where the action was against the carrier for failure to deliver cattle within a reasonable time, it was proper to permit evidence that the cattle were properly fed and watered before shipment, and were then in good condition, and that ordinarily the cattle so shipped would be ready for market as soon as they had been fed and watered, after delivery from the car, together with evidence as to the actual condition of the cattle upon their delivery to

[Southern Railway Company v. Proctor.]

consignee, and as to how long they were kept before they were in condition to be put on the market.

7. *Same.*—The evidence in this case stated and examined and held sufficient to go to the jury for the estimation of damages, under a stipulation of the shipping contract that value at the place and date of shipment would govern in the event of damages for which the carrier might be liable.

8. *Same; Jury Question.*—Where the action was for damages for failure to promptly deliver cattle shipped, and there was evidence tending to support a replication to a plea of defendant that plaintiff had not complied with the stipulation in the contract of shipment as to giving notice of injuries, that question was properly submitted to the jury for determination.

9. *Same; Limitation of Liability; Interstate Commerce.*—Under the acts of Congress of June 29, 1906, 34 U. S. St. 607, where the shipment of cattle is interstate, the carrier cannot by any contract with the shipper relieve itself from the duty of feeding and watering the animals in a proper case.

10. *Same.*—A failure of a shipper in an interstate shipment of cattle to perform the duties imposed upon it, is negligence per se.

11. *Same; Live Stock; Instructions.*—In an action against a carrier for injuries to cattle in transit from a failure to promptly deliver a charge that the defendant was not liable for any damage to the cattle attributable to a lack of proper bedding, made it a question for the jury, whether the injury was attributable in whole or in part to a lack of bedding, and gave the defendant the full benefit of a stipulation in the shipping contract against liability on that ground.

12. *Evidence; Admission of Similar Evidence for Opponent.*—Where a defendant by interrogatories and otherwise sought proof as to the place and hours of making delivery of the cattle, it is not in position to complain of the admission of such evidence on behalf of the plaintiff.

13. *Same; Opinion Evidence; Appearance of Animals.*—Where the action was for injury to cattle for a failure to promptly deliver, a witness could state whether the cattle looked to be suffering for food and water upon their arrival, and such answer did not state a conclusion or opinion. An ordinary witness is not capable of conveying a picture of the animals so as to enable the jury to reach a conclusion as to their condition without conveying the conclusion as to the need of food and water which he found on seeing the animals.

14. *Appel and Error; Review; Verdict; Conclusiveness.*—Where the court below refused to grant a new trial on the ground that the verdict was excessive, and there was evidence sustaining the verdict, which was not disputed or impeached by the defendant, this court on appeal will not reverse on the ground of an excessive verdict.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by R. F. Proctor against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The complaint as amended was as follows: "(A) Plaintiff claims of the defendant $150.00 damages for injury to one car load of cattle shipped by the defendant as a common carrier for hire for the plaintiff from Scottsboro, Ala., to Atlanta, in the state of Georgia, on or about the 8th day of July, 1907. Plaintiff avers that the defendant failed to deliver such car load of cattle to the consignee within a reasonable time, and by reason of such delay said cattle were injured, to the plaintiff's damage as aforesaid. (B) Plaintiff claims of the defendant the further sum of $150.00 as damages for this: On or about the 8th day of July, 1907, the plaintiff delivered to the defendant as a common carrier one car load of cattle to be shipped within a reasonable time for hire to Atlanta, in the state of Georgia, and delivered to Shippey Bros. & White, stock commission merchants, and the defendant failed to deliver said cattle to said Shippey Bros. & White within a reasonable time, and by reason of such failure said cattle suffered from rough handling and for want of food and water, and were injured to plaintiff's damage as aforesaid." Demurrers raised the questions discussed in the opinion.

The eleventh interrogatory was as follows: "What did you do with the cattle? Did you put them on the market; and, if so, when? Were they in condition to be put on the market, and, if not, how long did you keep them before they were in condition?" The answer is: "We sold said cattle after keeping them and watering them and feeding them two or three days. They were not in any condition to sell on arrival; one party refusing to buy them at any price when offered for sale." Interrogatory 12 is as follows: "What was the extent

or value of the injury to said cattle, or what was the difference between the value of said cattle in the condition they were when received by you and the ordinary condition of such cattle shipped the distance from Scottsboro, Ala., to Atlanta, Ga., properly handled and cared for on the road?" The answer was: "When we first received the cattle, they looked to be almost valueless; but, after feeding and watering them for two days, I decided that from one-half to three-quarters of a cent per pound would cover the damages. Under ordinary circumstances, cattle shipped from Scottsboro, Ala., to Atlanta, Ga., properly handled and cared for while on the road, would be ready for market on arrival."

The following charges were refused to the defendant: (2) "If the damage to cattle arose from want of feed and water during the shipment, the defendant is not liable therefor, if it is shown that the shipper did not feed and water them, or request the company to do so." (3) "If the jury believe from the evidence that the damage complained of arose from a want of food and water by the cattle after they were left on the side track in Atlanta, the defendant is not liable therefore." (8) "If the jury believe from the evidence that the plaintiff failed to give written notice of the claim for damages to any agent of the defendant before said cattle were removed from the place of delivery, and before said cattle were mingled with other live stock, they must find for the defendant." (9) "If the jury believe from the evidence that the failure of the plaintiff or his agent to accompany the cattle proximately contributed, on account of the want of attention, to the injury to the cattle, in that event the defendant is not liable, even though the jury believe from the evidence that the cattle were injured." (10) "Under the evidence in this case, the fact, if it be a fact, that the arrival of the cattle was unduly

delayed, and that the cattle suffered injury from a failure to feed and water them during the delay, will not entitle the plaintiff to recover for any damage growing out of such failure to feed and water the cattle."

LAWRENCE E. BROWN, for appellant. Counsel discuss the several assignments of error insisted upon and in support of the same cite the following authority:— *B. R. L. & P. Co. v. Camp,* 161 Ala. 456; *L. & N. v. Smith,* 40 So. 119; *L. & N. v. Landers,* 135 Ala. 505; *Johnson's case,* 75 Ala. 596; *Cent. Ry. Co. v. Smith,* 85 Ala. 47; *N. C. & St. L. v. Long,* 50 South. 130.

JOHN B. TALLEY, for appellee. If count A was insufficient, and count B sufficient, the error in overruling demurrer to count A was harmless.—*L. & N. v. Algood,* 113 Ala. 163; *N. C. & St. L. v. Landers,* 135 Ala. 500. There was evidence to support the replication to plea 7 and the court properly submitted the issues to the jury.—*L. & N. v. Landers,* 135 Ala. 504; *W. Ry. Co. v. Harwell,* 91 Ala. 340. The evidence as to damage is sufficient.—75 Ala. 596; 99 Ala. 389.

WALKER, P. J.—It fairly appears from the averments of count A of the complaint as amended that the shipment of cattle mentioned was for the plaintiff, that the defendant as a common carrier undertook for hire the carriage of the property for the plaintiff. In count B the consignors were described as stock commission merchants. We are of opinion that each of those counts sufficiently shows that the defendant as a common carrier assumed the duties of that relation to the plaintiff as a person interested in the goods shipped.

The averments of each of those counts as to the defendant's breach of its duty as carrier substantially followed in this respect the form. of complaint prescribed

27 AC

by the Code for an action against a carrier for failure to deliver property shipped within a reasonable time.— Code 1907, § 5382, form 15.

The consignor may maintain such a claim, though the goods were consigned to another, as the presumption that the consignee has title to the goods shipped is merely prima facie, and may be overcome by proof. The court was not in error in overruling the demurrer to the complaint as amended.—*Louisville & Nashville R. Co. v. Allgood,* 113 Ala. 163, 20 South. 986.

The appellant was in no position to complain of the admission of evidence as to the place and hours of making deliveries of cattle shipped to the consignee. By cross-interrogatories propounded to witness for the plaintiff whose testimony was taken by deposition and by direct interrogatories propounded to its own witness it sought proof on the same subject. And it may be added that the proof elicited by the question objected to was not at variance with the state of facts sought to be established by the defendant itself.

It is a matter of common knowledge that the effects of depriving animals of food and water for an unwonted time are manifested in their appearance. It was competent for the plaintiff to show that his cattle were injured in this way in consequence of an unreasonable delay in their arrival at the place of destination. Of necessity the principal available proof in this connection was evidence as to the appearance and condition of the cattle. The plaintiff sought to elicit proof on this subject by the question propounded to several of his witnesses: "State whether or not from your observation and experience in your judgment said cattle were suffering for food and water." This question was objected to because it called for the opinion or conclusion of the witness. Under a recognized modification of the gener-

al rule against admitting in evidence the opinions of ordinary witnesses, their conclusions as to the appearance of persons, animals, or things may be proved as being in their nature not mere opinions, but descriptive of facts. The law recognizes that ordinary witnesses as to such matters are not to be expected to be endowed with such powers of graphic description as to be able so to portray to the jury the subject of inquiry as to enable them to reach a conclusion as to its condition without the aid of the impression made upon or the conclusion reached by the witness who saw it. The ground upon which conclusions or opinions in reference to such matters are admitted is that from the very nature of the subject in issue it cannot be stated or described in such language as to enable persons not eyewitnesses to form an accurate judgment in regard to it.—Jones on Evidence, § 360; *Smith v. State,* 137 Ala. 22, 34 South. 396; *Birmingham Ry., L. & P. Co. v. Franscomb,* 124 Ala. 621, 27 South. 508; *South & North Ala. R. Co. v. McLendon,* 63 Ala. 266. If at the time in question the plaintiff's cattle were in fact suffering for the lack of food and water, and an eyewitness had been asked, not for his judgment or conclusion on the subject, but for a description of their condition so as to enable the jurors to draw their own inferences as to the fact and its cause, the probability is that, because of the inability of the witness to separate the indications upon which his conclusions were based from the conclusions themselves, he would not have confined himself to an enumeration of appearances, but would have attempted to convey to the jury the impression made upon himself by some such statement as that the cattle were in need of food and water, or that they appeared to be in a famishing and starved condition. The question objected to was not calculated to elicit, and did not in fact elicit,

what the law regards as inadmissible opinion evidence.

Part of the eleventh interrogatory to the plaintiff's witnesses was an inquiry as to the condition of the cattle when they were delivered to the consignee, and as to how long they were kept before they were in condition to be put on the market. It was proper to admit evidence on these points in connection with other evidence tending to show that the cattle had been properly fed and watered just before they were shipped, that they were then in good condition, and that ordinarily cattle transported by rail the distance from Scottsboro, Ala., to Atlanta, Ga., would be ready for the market as soon as they had been fed and watered after they had been delivered from the car. The defendant's objection was to the question as a whole. The question as a whole was not subject to objection on either of the grounds stated. On similar considerations it must be held that the court was not in error in overruling the defendant's objections to the twelfth interrogatory propounded to the plaintiff's witnesses and to the answers to that interrogatory. It is enough to say that the entire question and answers were not subject to objection on either of the grounds stated.

The plaintiff claimed that in consequence of undue delay in their transportation his cattle arrived at their destination in a damaged condition, resulting from rough handling and the prolonged deprivation of food and water. The defendant contended that it was not liable for any damage to the cattle which was attributable to lack of food and water while the shipment was delayed, and it assigns as error the refusal of several written charges which stated its position in reference to this feature of the case. This contention is based upon the stipulation in the bill of lading or shipping contract in reference to the shipper's feeding and attending the

cattle at his own expense and risk while on the car or at feeding or transfer points, etc. The claim is that the effect of that stipulation was to release the defendant from any duty to feed or water the cattle during the journey. Such effect could not be accorded to that stipulation under the facts in this case without a disregard of the peremptory requirements of the federal statute regulating the transportation of cattle, sheep, swine, and other animals.—Fed. Stat. An. Supplement 1909, p. 44 (Act Cong. June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178). That statute prohibits, with exceptions not applicable to the facts of this case, the confining of such animals in cars for a period longer than 28 consecutive hours without unloading them in a humane manner into properly equipped pens for rest, water, and feeding for a period of 5 consecutive hours; and provides that the animals so unloaded shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or, in case of his default in so doing, then by the carrier, at the reasonable expense of the owner or person in custody thereof, and that the carrier "shall in such case have a lien upon such animals for food, care and custody furnished, collectable at their destination in the same manner as the transportation charges are collected, and shall not be liable for any detention of such animals, when such detention is of a reasonable duration, to enable compliance with section 1 of this act; but nothing in this section shall be construed to prevent the owner or shipper of animals from furnishing food therefor, if he so desires." The shipment in this case was an interstate one, and was within the influence of that statute. There was evidence to support an inference that, when the cattle arrived at their destination, they had been kept confined in the

car, without food or water for more than 28 consecutive hours. Under the statute, the carrier cannot, by any contract with the shipper, relieve itself of the prescribed duty of feeding and watering the animals, if their owner or custodian fails to do so. It cannot by contract with the shipper exempt itself from liability for its own negligence; and its failure to perform the duty imposed upon it by the statute is negligence per se. The stipulation in the bill of lading cannot be given the effect of relieving the carrier of the duty imposed upon it by the statute.—*Grey's Ex'r v. Mobile Trade Co.*, 55 Ala. 387, 28 Am. Rep. 729; *Nashville C. & St. L. Ry. Co. v. Heggie Bros.*, 86 Ga. 210, 12 S. E. 363, 22 Am. St. Rep. 453; *Chesapeake & Ohio R. Co. v. American Exchange Bank*, 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449; *Reynolds v. Great Northern Ry. Co.*, 40 Wash. 163, 82 Pac. 161, 111 Am. St. Rep. 883. Each of the charges on this subject which the court refused involved the unwarranted assumption that there was no evidence tending to show that the defendant was under a duty to feed and water the cattle. The court was not in error in refusing to give either of those charges.

The court having, at the request of the defendant, instructed the jury that the defendant could not be held liable for any damages to the cattle which was attributable to a lack of proper bedding in the car, the appellant cannot sustain a claim that it did not, in the trial, have the full benefit of the stipulation on that subject in the shipping contract. Under the evidence, it was a question for the jury whether the injury to the cattle was attributable, in whole or in part, to the lack of bedding in the car or to the negligence of the defendant of which the plaintiff complained.

In like manner the defendant had the benefit, under charges given, of the stipulations in the shipping con-

tract in reference to the value at the place and date of shipment governing in the event of damage occurring for which the carrier might be liable, and in reference to giving notice to the carrier of a claim to damages for loss or injury to the cattle. Besides, there was evidence tending to support the averments of the plaintiff's replication to the defendant's plea setting up a breach of the last mentioned stipulation, on which the defendant took issue. The evidence as to the damaged condition of the cattle when they were delivered at Atlanta and as to the extent of their depreciation in value in consequence of the injuries they had sustained afforded some basis for estimating the loss so caused in their value at the place and date of shipment. Under the proceedings and evidence in the case, the presence in the shipping contract of the stipulations mentioned did not have the effect of entitling the defendant to the general affirmative charge in its favor.

It is insisted that the motion for a new trial should have been granted on the ground that the verdict was excessive in amount. In that respect the verdict was sustained by testimony which the defendant did not impeach or rebut. Under the familiar rules governing the review on appeal of the action of a trial court on a motion for a new trial, this court would not be justified in disturbing, on any of the grounds urged by counsel, the ruling made on such motion in this case.

Affirmed.