CHICAGO, R. I. & G. RY. CO. v. SCOTT.

(Court of Civil Appeals of Texas. Amarillo. Oct. 12, 1912. Rehearing Granted April 12, 1913.)

1. APPEAL AND ERROR (§ 743*)—ASSIGNMENTS OF ERROR—REFERENCE TO RECORD.

Assignments of error which make no reference to the pages of the record may not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

2. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—PLEADING—EXCEPTIONS.

On an appeal from a justice's court in an action for damages sustained in connection with a shipment of cattle, the overruling of an exception to the petition because it did not separately show the amount claimed because of a decline in the market, loss in weight, and depreciation in value was not reversible error, where it was not shown that because of such action defendant failed to procure testimony which it might otherwise have procured, or was deprived of any substantial right.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

3. JUSTICES OF THE PEACE (§ 174*)—APPEAL—PLEADING.

Technical rules of pleading do not apply to causes originating in and appealed from the justice's court.

[Ed. Note.—For other cases, see Justices of the Peace, Cent. Dig. §§ 665–693; Dec. Dig. § 174.*]

4. EVIDENCE (§ 445*)—PAROL EVIDENCE—CARRIAGE OF LIVE STOCK.

In an action against a carrier for damages sustained in connection with a shipment of cattle, the admission of evidence as to a conversation between the shipper and defendant's yardman relative to unloading the cattle for feeding and watering was not error, on the ground that it varied the written contract of shipment, which provided that the shipper should assume all risks and expenses in feeding and watering the cattle, especially where defendant attempted to show that the cattle were properly fed and watered, since defendant could waive that provision of the contract, and, if it did so and was guilty of negligence in connection with the feeding and watering, it would be liable.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2052–2065; Dec. Dig. § 445.*]

5. CARRIERS (§ 154*) — LIMITATION OF LIABILITY—CONSIDERATION.

Provisions in a contract of shipment limiting the carrier's liability, and requiring notice of injury as a condition precedent to any action, which the contract recited were in consideration of the reduced rate charged for the shipment, would be disregarded, where the evidence failed to show that the rate was less then the regular tariff rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 641–645, 667; Dec. Dig. § 154.*]

6. CARRIERS (§ 132*)—INJURIES TO FREIGHT—ACTIONS—BURDEN OF PROOF.

The Carmack Amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]) to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]) re-established the common-law rule that, when freight is delivered to a carrier in good condition and reaches its destination in bad condition, the presumption of negligence arises,

throwing the burden on the carrier of exonerating itself from liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582, 605; Dec. Dig. § 132.*]

7. CARRIERS (§ 218*) — CARRIAGE OF LIVE STOCK—LIMITATION OF LIABILITY.

Under the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]) to the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), a carrier of live stock, subject to the exceptions which would relieve a carrier from liability at common law, is an insurer of the animals, and therefore a provision of a contract of shipment that the shipper assumed all risk and expense of feeding and watering and otherwise caring for the live stock while in cars, yards, pens, or elsewhere, and should load and unload them at his own expense, was void.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

8. TRIAL (§ 252*)—INSTRUCTIONS — APPLICABILITY TO EVIDENCE — CARRIAGE OF LIVE STOCK.

In an action against a carrier for damages caused by delay to a shipment of cattle, the refusal of an instruction that, if the cattle were unloaded at C. in obedience to the federal law forbidding the keeping of live stock on cars longer than 28 hours without unloading them for at least five hours, the necessary and proper time for unloading and re-loading should not be considered, was not error where the evidence did not show that they were unloaded in order to comply with the federal law, but did show that they were kept at C. more than 15 hours, and that the shipment was about 60 hours in transit, although the usual time for making the trip was from 48 to 50 hours, which included the necessary time for compliance with the federal law.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

9. APPEAL AND ERROR (§ 1170*) — REVIEW—HARMLESS ERROR.

A judgment will not be reversed for technical errors where substantial justice has been done.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

Appeal from Oldham County Court; T. B. Jones, Judge.

Action by John Scott against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Gustavus & Jackson, of Amarillo, and N. H. Lassiter and Robt. Harrison, both of Ft. Worth, for appellant. Veale & Davidson, of Amarillo, for appellee.

HALL, J. John Scott instituted this suit against appellant Railway Company in the justice court of Oldham county, Tex., April 8, 1911, to recover $150 damages, growing out of a cattle shipment from Vega, Tex., to Kansas City, Mo., the shipment alleged to have been made about October 1, 1910. Upon a trial in the justice court judgment was rendered for plaintiff Scott for the amount claimed and costs of suit. Appellant herein by appeal removed the case to the county court of Oldham county, and in that court

moved to dismiss the cause because no claim or demand was ever lodged with the justice of the peace, nor any oral pleadings made before him stating the cause of action. This motion was overruled, and plaintiff then filed a petition setting out his claim, based upon negligent delay, failure to feed and water the cattle properly, and unreasonably and unnecessarily holding the cattle in the pens at Caldwell, Kan.

The defendant answered by general and special demurrers, general denial, and specially that the shipment was made under a written contract, pleading specially some of its provisions as follows:

First. The provision limiting the liability and duty of each carrier to its own line.

Second. That in fixing and guaranteeing through rates to a point beyond its own line the appellant acted only as agent for the connecting lines, and limiting its liability for injuries or loss to such as occurred upon its own line.

Third. That the live stock covered by the contract were not to be transported within any special time, nor delivered at destination in any particular hour, nor any season for any particular market value.

Fourth. Exempting the carrier from liability for loss or damage arising from overloading, crowding, or other accidents or causes, unless the injuries should be the direct results of negligence on the part of the carrier.

Fifth. Providing that the shipper shall assume all risk and expense of feeding, watering, bedding, and otherwise caring for the live stock while in the cars, yards, pens, or elsewhere, and that the shipper should load and unload the same at his own expense and risk.

Sixth. That as a condition precedent to claiming or recovering damages for any loss or injury to detention of live stock or delays in transportation thereof, covered by the contract, the shipper should as soon as he discovered such loss or injury promptly give notice thereof in writing to some general officer, claim agent, or station agent of the carrier or to its agent at destination or some other general officer of the delivering line before such stock is removed from the point of shipment or from the place of destination, and before it is mingled with other stock, such notice to be in writing, and in any event served within one day after the delivery of the stock at its destination, and that a failure to strictly comply with this provision should bar the recovery of any and all such matters.

Seventh. That the contract provided that it should be performed in the state of Missouri, and the rights and liabilities of the parties arising thereunder would and should be governed by the laws of said state; that under the laws of the state of Missouri such provision is binding and enforceable by a railway company, and the failure of a shipper to comply therewith is a bar to an action for damages.

Eighth. That as a condition precedent to the bringing of any suit for damages, for any loss or injury to the person or persons or property covered by this contract, the claimant shall give notice in writing to some general officer, claim agent, or station agent not later than 90 days after the date of the loss or injury claimed, and a failure to strictly comply with this provision shall be a bar to recovery of any and all damages occasioned to the person or persons or property embraced in the contract.

Upon a trial in the county court judgment was rendered in favor of the plaintiff for the sum of $150 principal, $15.37 interest, together with costs of suit. At a former day of this term, this judgment was affirmed upon oral opinion, since which time appellant has filed his motion for rehearing, and a request that we file findings of fact and conclusions of law, and in deference to said motion we will discuss such of the assignments of error as are presented in accordance with the rules.

[1] Appellant's assignments Nos. 1, 3, 5, 6, 7, 8, 9, 11, 12, 14, 15, 16, and 17 make no reference to the pages of the record, and some of them are in other respects defectively prepared and briefed, and will not be considered.

[2, 3] The second assignment of error submitted in appellant's brief assails the action of the county court in overruling defendant's third special exception to plaintiff's petition. This exception attacked the petition because it was not sufficiently specific in the claims for decline in the market, loss in weight, and depreciation in value, and did not show the amount claimed for each of these different injuries. It appears from the record that appellee's claim for damages on account of decline in the market was abandoned. No evidence was offered upon that issue, nor was it submitted to the jury. It has been often held, and without dissent, that technical rules of pleading do not apply to causes originating in and appealed from the justice court. In G., C. & S. F. Ry. Co. v. Hutcheson & Carrington, 3 Willson, Civ. Cas. Ct. App. § 96, we read: "Appellant excepted to the statement of appellee's cause of action because it did not show how and in what manner appellant was liable for services rendered the Central & Montgomery Railroad Company. This exception was overruled. Held that the ruling was correct. In justice court pleadings any such case may be oral. Plaintiffs were entitled to prove the facts which would entitle them to recover against defendants without lodging those facts in a written pleading, and the same rule obtained in the county court on appeal to that court." In I. & G. N. R. Co. v. Pool, 24 Tex. Civ. App. 575, 59 S. W. 911, Collard, Justice, said: "The assignment addressed to the failure to plead negligence by plaintiff is not well taken, but apart from this the rules of pleading governing courts of

record do not apply in this kind of suit that obtain in courts of record. Ry. Co. v. Donalson, 2 Willson, Civ. Cas. Ct. App. § 239. Pleadings in justice court are oral, and are not subject to the same restriction. Brunswig v. Kramer, 2 Willson, Civ. Cas. Ct. App. § 804. A brief statement on the docket is sufficient. Moore v. Jordan, 67 Tex. 394, 3 S. W. 317; Railway Co. v. Wright, 2 Willson, Civ. Cas. Ct. App. § 339; Railway Co. v. Hutcheson, 3 Willson, Civ. Cas. Ct. App. § 96. When a case is appealed from the justice court to the county court, the rules of pleading are not changed. They are still oral. Whitley v. Jackson, 1 White & W. Civ. Cas. Ct. App. § 576; Henry v. Blasco, 1 White & W. Civ. Cas. Ct. App. § 765. So, if it were necessary to allege negligence in a court of record to hold a common carrier liable for damages to a shipment while in transit, it would not be required in a court of justice of the peace nor in the county court on appeal from the former." Brown, Justice, in Rector v. Orange Rice Mill Co., 100 Tex. 591, 102 S. W. 402, after quoting article 1603, Revised Statutes of 1895, said: "The effect of the article is that no rule is prescribed, except that the statement which may be made by the parties shall be oral, and may be entered by the justice of the peace on his dockets. Our courts have uniformly held that the form in which a party to a suit in a justice court may state his cause of action or ground of defense is of no importance. An examination of the cases cited below will sustain the proposition that if from all that is stated, written and oral, the court can ascertain what right the plaintiff asserts, or what defense the defendant interposes, the pleading will be held sufficient." As further sustaining our position upon this assignment, we cite Batla v. Goodell, 53 Tex. Civ. App. 178, 115 S. W. 622; Etheridge v. S. A. & A. P. Ry. Co., 39 S. W. 204, and reiterate what was said by this court in Amarillo Commercial Co. v. C., R. I. & G. Ry. Co., 140 S. W. 377.

Appellant nowhere shows that it has been injured by the failure of the county court to sustain its special exception. We are told that it failed to procure testimony which it might otherwise have procured, or that it has been deprived of any substantial right whatever, by failure of the court to require appellee to itemize and specifically set out the amount of damages claimed by him. The contention is simply that the court failed to sustain a special exception, which might have been good had the suit been filed in a court of record.

[4] Under the fourth assignment, it is insisted that the court erred in permitting the plaintiff to testify that when the train reached Caldwell, Kan., and was stopped in the yards, he, with others accompanying the shipment, went upstairs to an office where they were directed to find the yardman; that the purpose of seeing the yardman was to give instructions about feeding and watering the cattle as they understood they were to be unloaded at that place; and that he, plaintiff, told this man that he wanted his cattle fed and watered, and gave him instructions about feeding and watering them, and he said he would do so. The objection urged to this testimony was that the plaintiff had alleged that a receipt or bill of lading had been issued by the defendant; that defendant had expressly pleaded that term of the contract, which was that plaintiff should assume all risks and expense of feeding, watering, and caring for the live stock while in the cars, yards, pens, or elsewhere, and should load and unload the same at his own expense and risk, and that the testimony proffered tended to vary and alter the terms of the written contract, and was irrelevant, immaterial, and incompetent for any purpose whatever. There was no error committed by the court in overruling these objections. The particular clause relied upon in the contract is: "That the second party (shipper) shall assume all risk and expense of feeding, watering, bedding, and otherwise caring for the live stock covered by this contract while in the cars, yards, pens, or elsewhere, and shall load and unload the same at his own expense." We know of no rule which would prohibit the carrier from waiving that or any other term of the contract if it saw fit to do so, and the proof shows that in this case the yardman assumed the duty of feeding and watering the cattle, and, if in doing so he was guilty of any negligence, appellant would be liable therefor. Appellant also upon the trial undertook to justify the alleged acts of negligence by introducing its witnesses to show that the cattle were properly fed and watered.

In the motion for rehearing appellant specially calls the attention of the court to the following cases: Adams Express Company v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. ——, C., St. P., M. & O. Ry. Co. v. Latta, 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. ——, and C., B. & Q. Ry. v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. ——, recently decided by the Supreme Court of the United States, as bearing upon the question here submitted; and also to the more recent case of M., K. & T. Ry. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. ——. These cases all construe what is known as the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 595 [U. S. Comp. St. Supp. 1911, p. 1307]) to the Interstate Commerce Commission Act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]). The case of Harriman Bros. decides that the valuation named in the shipping contract, signed by the shipper, is as much an agreed valuation within the Carmack Amendment as if the shipper had stated the value on inquiry, and

that there is nothing in the Carmack Amendment which forbids the shipper and the interstate carrier to enter into a contract limiting the carrier's liability to an agreed value. The case further holds that the stipulation in such a contract that an action must be brought within 90 days is valid. The Croninger, Latta, and Miller Cases merely announce the same doctrine. None of these cases are applicable to the issues presented by this appeal. If there was any agreed valuation in the contract sued upon, that clause of the contract has not been urged either in the court below or brought forward in the assignments of error on appeal.

[5] There is a provision in the shipping contract, which is as follows: "That for the consideration and mutual covenant and conditions herein contained, the said first party will transport for the said second party the livestock described below and the parties in charge thereof as hereinafter provided, viz.: two cars said to contain ——— head of cattle from Vega station to Kansas City station, consigned to F. W. Witherspoon, at the rate of ———, per ———, from ———, to ———, subject to minimum weights and lengths of cars specified and provided for in tariff. Said rate being less than the rate charged for shipments transported at carrier's risk for which reduced rate and other considerations, it is mutually agreed between the parties hereto as follows." There is not a line of testimony in the record tending to show that the shipments were made for less than the regular tariff rate. Therefore the consideration (if indeed it could be held to be a consideration) for the various stipulations following this one and some of which have been pleaded by the appellant has not been proven. It follows that this case must be decided under the general rule applicable to such contracts.

[6] This court held in the case of P. & N. T. Ry. Co. v. Peter Meyer (not yet officially reported) 155 S. W. 309, that the Carmack Amendment had the effect of annulling many of the stipulations universally found in bills of lading issued upon the shipment of live stock and re-established the common-law rule that, when freight is delivered to a carrier in good condition and reaches its destination in bad condition, the presumption of negligence arises, throwing the burden upon the carrier of exonerating itself from liability by proof tending to detect the guilty carrier.

[7] It has been further held by this court in the case of Ft. Worth & Denver City Ry. Co. v. Jordan, 155 S. W. 676 (not yet officially reported), that a carrier of live stock is an insurer of the animals delivered to it, and we believe such to be the spirit and intention of the Carmack Amendment, subject to the exceptions which relieve a carrier from liability at common law. None of the stip-

ulations of the contract pleaded by appellants have been considered in the cases passed upon by the Supreme Court of the United States, mentioned above, except the sixth and eighth paragraphs, relating to the question of notice of damages at the destination point, and the written notice within ninety days as conditions precedent to the bringing of any suit for damages, and these stipulations are not briefed and are waived by appellant. In our opinion the Carmack Amendment renders that term of the contract which provides "that the second party shall assume all risk and expense of feeding, watering, bedding and otherwise caring for the livestock covered by this contract while in cars, yards, pens, or elsewhere, and shall load and unload the same at his own expense and risk," void. The carrier under the common law is primarily liable for all damages caused by its failure to feed, water, properly load and unload, and otherwise care for live stock while in its possession, and it cannot under the Carmack Amendment make a valid contract shifting its liability to the shipper. So. Ry. v. Proctor, 3 Ala. App. 413, 57 South. 513.

[8] The defendant asked a special charge to the effect that a railroad company transporting live stock is not permitted to keep such stock on cars longer than 28 hours or for 36 hours when the owner or shipper has signed a written waiver of the 28-hour law without unloading such live stock for a period of at least 5 hours for feed, water, and rest, and if the jury should find that the cattle were unloaded at Caldwell, on account of and in obedience to this law, not to consider the necessary and proper time for unloading and reloading said cattle and for being in the pens for five hours as any part of the time used in transporting the same. There was no proof that the cattle were unloaded at Caldwell in order to comply with the federal law. The record discloses that the cattle were in Caldwell more than 15 hours, and that the shipment was about 60 hours in transit when the usual and customary time for making the trip was from 48 to 50 hours. We think the jury were authorized to find that any time consumed beyond 50 hours was an unreasonable delay, since the testimony showed that 50 hours included the necessary time for rest, etc., under the federal act. We find that there was an unusual and unnecessary delay, and that the evidence supports the verdict.

The fifteenth assignment has already been disposed of in what has heretofore been said with reference to the duty resting upon appellee to feed, water, and care for his cattle while in the pens.

The sixteenth and seventeenth assignments are without merit, and with the others are overruled.

[9] A careful review of the entire record

shows that the charge of the court in some instances was even more favorable to appellant than it should have been under a strict construction of the Carmack Amendment; that the evidence is sufficient to sustain a recovery; and, while there may be some technical errors cropping out in the record, upon the whole, substantial justice has been done, and we are unwilling to reverse a judgment under such conditions. Having granted the motion for rehearing upon the finding and conclusions, the judgment is affirmed.