### MARY J. HORTER ET AL V. A. C. HERNDON ET AL.

### No. 1024.

**1. Appeal by Plaintiff—Cross Appeal by One Defendant—Appeal Bond Necessary.**

Plaintiffs, in an action for the title to land brought jointly against B. and H., recovered judgment against B.; and from the judgment in favor of H., they appealed. B. gave notice of cross appeal from the judgment against him, and filed an assignment of errors, but failed to execute any appeal bond. Held, that the judgment against B. was not appealed from, and would not be reviewed.

**2. Fraud as Affecting Joint Participant in Its Benefits—Cancellation of Deed.**

Where two persons are acting together in the acquisition of certain lands, the fraud and false representations of one of them, whereby a deed is procured vesting the title in them both, will affect the other, and such deed will be canceled as to his interest as well as that of his associate.

APPEAL from Harris. Tried below before Hon. S. H. BRASHEAR.

*Hutcheson, Campbell & Sears,* for appellants.—1. The facts in this case show that Herndon interested Bean in dealing for this land with plaintiffs, and that they were to be jointly interested in whatever was made out of it. Herndon knew the value of the land, and that plaintiffs' title to it was good, and that plaintiffs had no personal knowledge about it or its value; he also knew that Bean had procured a power of attorney from plaintiffs under which both were to deal with the land for plaintiffs, and when he sent Bean his check for his part of the purchase price, he knew the land had been sold for a grossly inadequate price; and the court having properly found that Bean acquired the land from the plaintiffs through fraud, should have rendered a judgment for the plaintiffs for the land against Herndon as well as against Bean. Shannon v. Marmaduke, 14 Texas, 217; Gardner v. Ogden, 22 N. Y., 341; Michaud v. Girod, 4 How. (U. S.), 503; Ferguson v. Dent, 24 Fed. Rep., 412; Lingke v. Wilkinson, 57 N. Y., 452; 2 Pom. Eq. Jur., sec. 959; Story's Equity, secs. 315, 316a; Slater v. Trustee, 21 S. W. Rep., 285; Bispham's Equity, sec. 232; Adams' Equity, 184, and note; Wright v. Calhoun, 19 Texas, 420; same case, 23 Texas, 523.

2. The court erred in holding that Herndon was an innocent purchaser of the land in controversy, and in rendering judgment for him, because the facts show that Bean was Herndon's agent, and that they were jointly interested in the acquisition of plaintiff's land, both of which facts preclude his being an innocent purchaser. Oliver v. Piatt, 3 How. (U. S.), 333; Halsell v. Musgrove, 5 Texas Civ. App., 479; Wright v. Calhoun, 19 Texas, 420.

3. At the time Bean fraudulently acquired the land in controversy from plaintiffs, he and Herndon were both acting together to acquire plaintiffs' land, and did acquire it together, and the acts and fraud of the one in acquiring plaintiffs' title affected the other, and the court should have rendered judgment against both Bean and Herndon. The mere fact that Herndon did not know of Bean's fraudulent statements and representations to plaintiff does not entitle him to profit by Bean's fraud, for they were partners in the purchase of the land, and the fraud of one vitiates the sale as to both. Alvin v. Piatt, 3 How., 333; Slater v. Trustee, 21 S. W. Rep., 285; Bishop on Contracts, sec. 387; Henderson v. Railway, 17 Texas, 575; Wright v. Calhoun, 19 Texas, 420.

*E. P. Hamblen,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellants, Mary J. Horter and Annie E. Horter, against A. C. Herndon, Cotton W. Bean and G. F. Wanson, for the recovery of an undivided one-half interest in the W. J. Lovett 1280 acres situated in Harris County. Appellants were the sole heirs of Washington Horter, deceased, and as such owned an undivided one-half of said survey. The appellees, Herndon and Bean, claimed the land under conveyances from the appellants to G. F. Wanson, and from Wanson to themselves. Appellants had also contracted with Bean, as evidenced by the power of attorney executed by them to him, to give him one-half of the land to recover it for them from adverse claimants. By their action the appellants sought to set aside the power of attorney and deeds as obtained through fraud, tendered back the money received by them, and prayed for the recovery of the land. The court below found that the appellants were misled and deceived by Bean, and that Wanson took the title in trust for him, but that Herndon was an innocent purchaser; so judgment was rendered in favor of the appellants against Bean and Wanson for one-half of the land sued for, and in favor of Herndon as to the other one-half, and setting aside the above mentioned instruments except in so far as they affected the rights of Herndon.

The plaintiffs have appealed from the judgment rendered against them, and Bean has sought by cross-assignments of error to appeal from the judgment against him. He has not filed a copy of his brief in this court with the certificate of the clerk of the court below, as required by Rule 101 for District and County Courts. This, however, would not be sufficient to have the judgment against him revised. The cross-appeal provided for by the rule above cited is upon a judgment already appealed from by the adverse party. Plaintiffs have not appealed from the judgment against Bean, and in order to entitle him to have that judgment reviewed, it would be necessary for him to give notice of appeal and to file an appeal bond. He gave notice of appeal, but filed no bond. Consequently, the judgment against him stands unappealed from, and will not be disturbed. Railway v. Skinner, 23 S. W. Rep., 1001.

In May, 1892, the W. J. Lovett 1280 acres was claimed by one Mrs. O'Donnell, who put it in the hands of Herndon to sell. It was worth $8 an acre. Herndon was a real estate agent doing business in the city of Houston; also a land speculator and engaged in hunting up lands and working land titles. He found a purchaser for the land at $8 an acre, but the attorneys who examined the title for him pronounced it worthless, and thereupon Mrs. O'Donnel abandoned her claim, and Herndon knew it. He thereupon, upon his own account, began a search for the heirs of Washington Horter, as well as of Parton, and put agents at work looking up the heirs, among whom was the defendant Cotton W. Bean, who resided in New York City, and was engaged in law and real estate business. Herndon's purpose was to acquire the land, either by contract to recover it for one-half, or to purchase it. Bean found the heirs, who are the plaintiffs in this suit, and he and Herndon entered into a correspondence about the land, and the latter enlisted Bean in the purchase thereof. He directed Bean either to obtain a contract therefor with an interest therein, or to buy the same.

Mrs. O'Donnel, who had claimed the land, had paid all taxes thereon. It had never been sold for taxes, and had no liens thereon for taxes. She had formerly had it enclosed in a pasture, but no title by limitation had ever matured, and she was not then in possession and was not claiming it. The plaintiffs resided in the city of Philadelphia where Bean found them. They knew nothing about the land, or of its location or value, and what information they obtained was from Bean. He told them that persons were in possession of the land holding it by tax title, and that they must be dispossessed or compromised with, and that action would have to be taken at once as the statute of limitation would run in their favor. By these representations, which were not true, he secured a contract with plaintiffs in his name to recover the land for them for one-half thereof, with power to sue or compromise and to sell and convey. This power of attorney was dated June 30, 1892. Bean sent it at once to Herndon, who had an interest with him in the contract. After this Bean entered into a correspondence with the plaintiff Mary J. Horter, who is the mother of the plaintiff Annie E. Horter, and falsely stated to her that he had taken steps against "the occupant under the tax title"; also, later, that "the party holding tax title to the land seems disposed to fight our claim, but we think he will pay us at least seven or eight hundred dollars to compromise, but we want one thousand dollars, so that you and I could get five hundred dollars each. Our object is to get all we can, and take no risk of a long law suit so far away."

On August 16, 1892, Bean went to see the plaintiffs at Cape May, and procured a deed from them to Wanson for a consideration of $1000, though the consideration recited in the deed is $2500, Bean to receive one-half. He then paid plaintiffs $100 in cash and gave his own check for $400, which, at his request, they held, and he sent them afterwards $400 and took up his check. Five hundred dollars was all that plaintiffs received. The plaintiffs supposed Wanson was the party holding

the tax title. Bean wrote to Herndon that the land could be bought for $1300. Herndon sent him $650, and afterwards received the deeds from plaintiffs to Wanson and from Wanson to Herndon and Bean; the latter was dated August 26, 1892, and recited a consideration of $5000. Bean and Wanson both testified that Wanson was a bona fide purchaser, and that the purported sale by Wanson to Bean for himself and Herndon was a genuine transaction in which Wanson got a profit of $300. But there are circumstances which sustain the finding of the court below that Wanson was a trustee for Bean, and such is the conclusion of this court. One strong circumstance against Herndon and Bean is their failure and refusal to produce their correspondence, which would have set forth their entire transaction as it was, for they had never met, and their understanding with each other and the instructions and information given by Herndon to Bean were contained in the letters that passed between them.

Plaintiffs were deceived and defrauded by the misrepresentations of Bean. They were induced to act promptly and enter into the contract at once by the false statement that their title to the land was about to be defeated by the bar of limitation. The price was further cheapened by representations of a pretended tax title, and they were induced to believe that parties who were represented to be in possession were treating for a compromise. There can be no doubt about the fraud of Bean. Herndon is affected with it, because he and Bean were acting together to acquire the land; not only that of plaintiffs, but also the share of Parton, against whom they were seeking to establish some claim of indebtedness to which they might subject his land and sell it, as they had failed to discover his whereabouts and learned that he had left the country. Bean was to obtain a contract or buy, both at the instance of Herndon. He was Herndon's agent to purchase the land, and Herndon cannot reap an advantage from his fraud. It is impossible to view Herndon in the light of an innocent purchaser. Wanson was simply an interposed party, put in by the ingenuity of Bean in order to remove himself and Herndon as far as possible from the plaintiffs whose agent he also was. Whether it was for this purpose, or to enable him to deceive Herndon as to the amount to be paid to plaintiffs, thereby defrauding both of his principals, so long as the title to Wanson was in trust for Bean it would make no difference, for Herndon's title would be directly affected by the fraud of his agent in getting the title from plaintiffs. He instructed Bean to buy the land and take a deed direct from the plaintiffs, evidently meaning that he should not, acting under his power of attorney, convey it himself. This Bean did, interposing, however, Wanson, who was only a vehicle of the title, and the passage of the title through Wanson cannot clear it of the vice of Bean's fraud and make it good in Herndon.

Since the contract by which the plaintiffs agreed to give Bean one-half of the net proceeds of the land was obtained through fraud and misrepresentation, and was properly set aside and canceled by the judg-

est thereunder for any supposed recovery of the land for the plaintiffs. Because plaintiffs, by the misrepresentations of Bean, were willing to give up one-half of the land for supposed services, it does not follow that Herndon can avail himself of that fact to have the judgment in his favor affirmed. This is all that the independent proposition stated in his brief amounts to

The judgment of the court below in favor of Herndon will be reversed, and judgment will be here rendered in favor of the plaintiffs against the defendants for the land sued for, with writ of possession, and that the money tendered into court by the plaintiffs be paid to the defendants.

*Reversed and rendered.*

Delivered March 5, 1896.