MISSOURI PAC. RY. CO. v. CHEEK et al.

(Court of Civil Appeals of Texas. Amarillo. May 10, 1913. Rehearing Denied June 7, 1913.)

1. APPEAL AND ERROR (§ 1045*) — PEREMPTORY CHALLENGES—PREJUDICE.

Where, in an action against several connecting carriers, the bill of exceptions did not show that one of them exhausted its peremptory challenges, or that any juror was accepted who was objectionable to such defendant, it was not harmed by the court's refusal to allow each defendant six peremptory challenges.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4124–4127; Dec. Dig. § 1045.*]

2. APPEAL AND ERROR (§ 743*)—ASSIGNMENT—MOTION FOR NEW TRIAL—REFERENCE.

Where a motion for a new trial stated as one of the grounds that the verdict and judgment were contrary to the law and the evidence, in that they were excessive as to the moving defendant, in that the verdict finds against it in a larger proportion than is justified by the evidence or the law applicable to the facts proven, an assignment of error in the same language sufficiently complied with Court of Appeals rules 24 and 25 (142 S. W. xii), requiring the assignment to refer to the portion of the motion for new trial in which the alleged error has been brought to the attention of the trial court, the purpose of the rules being merely to show to the Court of Appeals that the point was presented to the trial court in the motion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2999, 3011; Dec. Dig. § 743.*]

3. NEW TRIAL (§ 128*)—MOTION—GROUNDS—GENERAL STATEMENT.

Since the excessiveness of the verdict is a question of fact depending on the evidence, an objection in a motion for new trial that the verdict and judgment are contrary to the law and the evidence, in that they are excessive as to the complaining defendant, in that the verdict finds against it in a larger proportion than is justified by the evidence or the law applicable to the facts proven, is too general for failure to show wherein the evidence is insufficient to sustain the verdict.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 257–262; Dec. Dig. § 128.*]

4. CARRIERS (§ 230*)—TRANSPORTATION OF ANIMALS—CONNECTING CARRIERS—INJURIES TO ANIMALS — ACTIONS — INSTRUCTIONS — "ACCRUED."

In an action against a connecting carrier for injuries to a shipment of live stock, an instruction that the several defendants, if liable at all, were liable only for the loss or damage, if any, accruing on their own line, and neither of the defendants was liable for any loss or damage occurring on any other of the defendant's lines, was not objectionable as confusing the terms "occurred" and "accrued," part of the primary meaning of the word "accrued" being to arise, proceed, or come, and the court having instructed that the loss must arise through the negligence of the particular defendant on whose line the damage was sustained before it could be assessed against such carrier and should proceed from such negligence, the instruction meant that the cause of action must arise or come into existence while the stock was being carried by the particular carrier, and was therefore not misleading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*

For other definitions, see Words and Phrases, vol. 1, pp. 101–103.]

5. TRIAL (§ 260*) — INSTRUCTIONS — REQUEST TO CHARGE.

Where, in an action against connecting carriers for injuries to cattle, the court at defendant's request instructed the jury that if the cattle were weak and poor and unable to make the trip, and by reason thereof the cattle were damaged, the jury should not allow such damages against defendant, and that, in order to allow for delay, they must find not only that it was unreasonable, but that it arose from defendant's negligence, proximately causing the loss, which negligence was properly defined, it was not error to refuse to charge that a common carrier was not an insurer of such freight which is inherently susceptible to damage, and is only required to exercise ordinary care to give the cattle prompt and safe transportation.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. CARRIERS (§ 219*)—CONNECTING CARRIERS—AGENCY—PAYMENT OF FREIGHT.

Where an initial carrier had notice of an arrangement that the consignee of certain cattle in controversy would pay the freight, such knowledge was chargeable to the subsequent connecting carriers, so that the shipper's failure to communicate an arrangement as to the freight to a connecting carrier's agent at a local point along the route was no defense to the shipper's right of action for delay at that point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. § 219.*]

7. CARRIERS (§ 219*) — TRANSPORTATION OF LIVE STOCK—DEMAND FOR FREIGHT—INTERMEDIATE STATION.

Though a railroad company may hold a shipment until the freight charges are paid, a connecting carrier cannot lawfully detain cattle at an intermediate station because of a shipper's nonpayment of freight, nor would the fact that the shipper did not notify the carrier's station agent of an arrangement by the consignee to pay the freight relieve the carrier from damage caused by an unseasonable demand or failure to use due care in holding the cattle, especially in absence of the proof that, had the agent been so notified by the shipper, the cattle would have proceeded.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. § 219.*]

8. APPEAL AND ERROR (§ 389*) — RIGHT TO APPEAL—PAUPER'S OATH—AFFIDAVIT.

An affidavit by a railroad company to appeal in forma pauperis sworn to before a notary public and alleging that it was unable to pay the costs of the appeal or any part thereof or to give security therefor to which was attached no certificate of the county judge or the judge trying the case, that inability to pay

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

costs had been proved, was not a sufficient compliance with Rev. Civ. St. 1911, art. 2098.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2072–2076; Dec. Dig. § 389.*]

9. APPEAL AND ERROR (§ 747*) — CROSS-ASSIGNMENTS OF ERROR—REVIEW.

Where a codefendant unsuccessfully attempted to appeal in forma pauperis, it was in the Court of Civil Appeals only as an appellee, and could not assign cross-errors against its coappellee under district court rule 101 (142 S. W. xxiv), permitting cross-assignments only against the appellant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3053–3056; Dec. Dig. § 747.*]

10. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

In an action against connecting carriers for damages to cattle during transportation, a charge at the instance of the M. Company that the jury should find no damage against it for failure to receive the cattle at Milton, Kan., because of lack of facilities there for feed, water, and rest, so that the carrier would be enabled to transport the cattle to destination within the time limit, in which the jury was also instructed to find for the M. Company with reference to any loss by reason of shipping them to Wichita, was not prejudicial to the K. Company, the court having charged that the jury could not find anything against the latter for loss or injury resulting from the M. Company's failure to receive the cattle at Milton, or the failure of the K. Company to deliver the cattle to its connecting carrier at that point.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

Appeal from District Court, Foard County, D. E. Decker, Judge.

Action by J. F. Cheek and others against the Missouri Pacific Railway Company and others. Judgment for plaintiffs, and the Missouri Pacific Railway Company appeals. Affirmed.

T. B. McCormick, of Dallas, and L. W. Allred, of Chillicothe, for appellant. B. K. Goree, of Ft. Worth, Flippen, Gresham & Freeman, of Dallas, G. W. Walthall, of Crowell, and D. J. Brookreson, of Benjamin, for appellees.

HUFF, C. J. This suit was brought by J. F. Cheek in the district court of Foard county against the Texas & Pacific Railway Company, Kansas City, Mexico & Orient Railway Company of Texas, Kansas City, Mexico & Orient Railway Company, and the Missouri Pacific Railway Company to recover of said defendants damages alleged to have been received by him in the transportation of 17 cars of cattle delivered at Colorado, Tex., on April 27, 1909, for shipment to Hale, Kan., over the lines of said defendants. The suit was tried on the 30th day of October, 1912, and resulted in a judgment in favor of the plaintiffs for the sum of $1,097.20, apportioned $731.50 against the Missouri Pacific and $365.20 against the Kansas City, Mexico & Orient Railway Company, and in favor of the Kansas City, Mexico & Orient Railway Company of Texas, and the Texas & Pacific Railway Company. Motions for new trial were duly filed by defendants Kansas City, Mexico & Orient Railway Company and Missouri Pacific Railway Company, and were by the court overruled, whereupon appellant perfected its appeal, and now brings this cause before this court for a revision of errors assigned.

[1] By appellant's, the Missouri Pacific Railway Company's, first assignment complaint is made to the action of the court in not allowing it to exercise six peremptory challenges in striking the jury. The shipment was an interstate one, and as we understand the law to be upon a through contract of shipment. Each road alleges that the cattle were transported over its line of road with reasonable dispatch and with ordinary care, but did not seek a recovery over against its codefendant for any damage alleged against it, but alleging, if loss occurred, it was on the road of its codefendant. It may be conceded that if the appellee Cheek, plaintiff below, established loss, that the interest of the several defendants would become antagonistic, and therefore each would be entitled to the statutory number of peremptory challenges. Railway Co. v. Bingham, 40 Tex. Civ. App. 469, 89 S. W. 1113. The bill of exceptions does not show that appellant exhausted its peremptory challenges, nor that any person was taken on the jury objectionable to the appellant. No injury is shown, and if error it is harmless. Railway Co. v. Barnes, 72 S. W. 1041; Snow v. Starr, 75 Tex. 411, 12 S. W. 673; Railway Co. v. Terrell, 69 Tex. 650, 7 S. W. 670.

[2] The second assignment is: "The verdict and judgment is contrary to the law and the evidence, in that they are excessive as to this defendant, in that the verdict finds against it in a larger proportion than was justified by the evidence or the law applicable to the facts proven." The motion for new trial forming the basis of this assignment is in the same language. The appellee objects to this assignment because it does not point out that portion of the motion for new trial upon which it is predicated. The statement under this assignment refers to the ground set up in a motion for new trial. We are inclined to think rules 24 and 25 (142 S. W. xii) sufficiently or substantially complied with if the grounds in the motion for new trial are referred to either in the assignment or statement. We think the purpose of the rule is that the appellate court may see that the trial court was given an opportunity to correct the error complained of in the court below, and when that appears sufficiently in the brief, either in the assignment or in the statement thereunder, the object of the rule has been substantially met.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

[3] It is further objected that neither specifically point out the error relied upon because the facts in issue to show that the evidence was incompetent or insufficient to establish are not shown to have been set out and specified as required by the rules in the motion for new trial. We believe the objection well taken; both the assignment and the motion for new trial are too general. The question of the excessiveness of the verdict is a question of fact, and the attention of the trial court should be called to the insufficiency of the evidence in a specific way so that the trial court might correct the error if there was one. Rules 68 and 71a for the district court (142 S. W. xxii, 145 S. W. vii); rules 25 and 26 for Courts of Civil Appeals (142 S. W. xii); Railway Co. v. McVey, 81 S. W. 1001, second column and authorities; Railway Co. v. Miller, 124 S. W. 109; Railway Co. v. Fesmire, 150 S. W. 201, and authorities; Railway Co. v. Goodrich, 149 S. W. 1176. However, we have given the testimony set out by appellant under this assignment consideration, and we are not able to say therefrom that the verdict is manifestly more against appellant than was warranted by the testimony. It might appear therefrom that the verdict against the Orient Railway is too small, and not in proportion to the amount the jury would have been warranted in finding against it. We overrule the second assignment.

[4] Under the third, fourth, and fifth assignments of error appellant presents the proposition that: "A carrier is liable for damage proximately caused by its failure to exercise ordinary care as applied to the character and circumstances of the shipment, whether the damage develops or manifests itself on its own line or after the shipment has passed to a succeeding carrier, and conversely the succeeding carrier is not liable for such damage as may develop or become manifest on its line, but which was in fact caused proximately by the failure to exercise such ordinary care by a carrier or by carriers preceding it in such transportation." The court refused special charge No. 2, which, in effect, required the court to charge the jury that, if certain injuries developed while on appellant's line of road not proximately caused by its failure to exercise ordinary care in the handling of cattle while on its line or that injuries developed and proximately caused by previous conditions or the handling before received by it, then to find for appellant for such damages. The main complaint appears to be the following paragraph of the court's charge: "You are instructed that the same defendants are liable, if at all, as herein charged, only for the loss or damage, if any, accruing upon its own line of railway, and neither of said defendants is liable for any loss or damage occurring upon any other of the defendants' lines herein." It is insisted the court confused the terms "occurred" and "accrued" in such man-

ner as to charge contrary to the law and also contrary to other portions of the court's charge. Part of the primary meaning of the word "accrued" is to arise, proceed or come. So, if the court had instructed the jury "defendants are liable only for loss or damage arising on its own line," appellant doubtless would not have insisted the charge subject to the criticism urged. That is, that it authorized the jury to find against appellant for loss "developed" on its line occasioned by the negligence of some other. The court in its charge to the jury instructed them that the loss must arise through the negligence of the particular defendant upon whose line the damage was sustained before it could be assessed against such carrier, and should proceed from such negligence, which must be the proximate cause of the injury. The word in the charge apparently is not used in the sense of accretion or growth from the act of some other negligence. The court in several paragraphs of the charge plainly told the jury neither of the carriers would be liable for loss or damage produced by negligence occurring on another line. The reading of the charge conveys to the mind that appellees' cause of action against appellant for loss or damage must arise, begin, spring up, originate on its own line, and not grow out of or develop from negligence which occurred or happened upon some other. The Connecticut Supreme Court in the case of Eising v. Andrews, 66 Conn. 64, 33 Atl. 586, 50 Am. St. Rep. 77, in speaking of the meaning of the word accrue, said: "Applied to a cause of action the term 'to accrue' means to arrive; to commence; to come into existence; to become a present enforceable demand." The Wisconsin court said in Emerson v. Steamboat Shawano City, 10 Wis. 435: "The verb 'to accrue' is often and properly used to convey the same idea as the verb 'to arise.' Such is evidently the sense in which it is here used. A cause of action may be said to arise when the contract out of which it grows is entered into or made." To the same effect are the decisions of the Supreme Court of the United States. Amy v. Dubuque, 98 U. S. 470, 25 L. Ed. 228; Webber v. State Harbor Com'rs, 85 U. S. 57, 21 L. Ed. 798. We do not think the charge of the court subject to the criticism made by this appellant that the jury were warranted in finding damages which developed while on its line, but which arose from the negligence of the preceding connecting carrier, and while the cattle were on the line of such preceding carrier. The court's charge throughout carefully guarded and instructed the jury against allowing the appellant such damage.

The charge in the third, fourth, eleventh, and thirteenth paragraphs, and in the specially requested instruction by appellant, limited the damages to the line of road upon which it occurred.

[5] Appellant, by the sixth, seventh, and

eighth assignments complains of the charge of the trial court in paragraph two of its charge, as follows: "In this connection you are charged that it was the duty of each of said defendants to exercise ordinary care in handling said cattle while in the course of transportation over its line and to transport and deliver the same without unreasonable delay and with reasonable dispatch over its line"—and because he failed to give special charges Nos. 6 and 9. The proposition of appellant under this assignment is: "A common carrier is not an insurer of such freight being inherently susceptible to damage, and is only required by law to exercise ordinary care to give the cattle prompt and safe transportation." The requested special charge No. 6 was to the effect that the carrier was not an insurer of live stock, and is not liable for injuries proximately due to the weak condition or infirmities for shipment, and No. 9 is to the effect, delay, to be actionable, must be unreasonable and due to negligence which must be the proximate cause of the injury. The court in the third paragraph of his charge instructed the jury as follows: "That if either of said defendants negligently failed to perform or discharge its duty, as herein defined, and that as a result of such negligence, if any, said cattle of plaintiff or any of them were lost, damaged, or injured, as the direct and proximate result of said defendant, then," etc. In the fourth paragraph the jury were told: "That neither of said defendants would be liable for the negligence or damages done, if any, by any other defendant, and would be liable for damage if any resulting only from its own negligence." In the fifth paragraph he defined "negligence." In the sixth paragraph the law was applied to the facts and the jury, among other things, instructed: "And if you believe that said delays, if any, of such handling of said cattle the same received were the result of the negligence, if any, on the part of said defendants, and that as a result thereof," etc. In the seventh paragraph the jury were told: "In this connection you are charged, however, that the said defendants nor any of them would be liable for such delay, if any, reasonable and necessary in connection with the transportation and handling of such cattle nor for any loss, damage, or injury resulting therefrom, and said defendants nor any of them would be liable for any loss, damage, or injury resulting from the usual and ordinary handling of such shipment of cattle during such transportation." In the twelfth paragraph the jury were told: "If the cattle were so poor and weak and thin as to be unable to stand the shipment when handled and transported with ordinary care, and as a result of such inherent weakness or poverty, from which condition any died or were injured, plaintiff could not recover damages therefor, and in estimating damages they would exclude loss or damage resulting from the weakness or poverty of said cattle, and not proximately caused by the negligence of the defendants." The court further, at the request of the appellant, instructed the jury substantially that if the cattle were weak and poor and unable to make the voyage, and that by reason thereof they were damaged, they would not allow such damages against appellant. We think the trial court was very careful to inform the jury that, in order to allow for delay, they must find, not only that it was unreasonable, but that it arose from the negligence of appellant, proximately causing loss or damage, which negligence he carefully theretofore defined.

[6] In the ninth assignment appellant urges that the trial court committed reversible error in refusing charge No. 10, which is as follows: "In this shipment of cattle, no notice relative to the payment of freight by Frank Witherspoon nor agreement on the part of the Missouri Pacific Railway Company to look to him for the freight is shown by the evidence. It had a right to demand payment of the freight before delivery, and if it did so and the plaintiff said he could not pay same, but failed to communicate to the agent at Sedan that Frank Witherspoon had arranged to pay the freight, and you find and believe from the evidence that a person of ordinary prudence under such circumstances would have communicated said fact, and that the failure of the plaintiff to so advise the agent of such fact resulted in whole or in part in causing the delay at Sedan, then for so much of said delay so caused, the plaintiff can in no event recover anything." This was a shipment of cattle from Colorado, Tex., situated on the Texas & Pacific Railway Company to Hale, Kan., on appellant's line of road. A through bill of lading was executed by the Texas & Pacific Railway and the cattle routed over the Texas & Pacific Railway Company to Sweetwater; thence over the Kansas City, Mexico & Orient Railway Company of Texas and the Kansas City, Mexico & Orient Railway Company to Milton, situated on the Orient road, where it intersects the Missouri Pacific Railway Company and thence over the Missouri Pacific Railway Company to the destination of the shipment. When the cattle arrived at Milton, the Missouri Pacific Railway Company refused to receive the cattle at that point, because it had no sufficient facilities to rest, feed, and water them, and notified the Orient road to that effect. To have accepted the cattle at that point, it would have required keeping the cattle on board the cars over the time permitted by the law before delivering them at their destination. The cattle then, by arrangements between the two roads, were taken on to Wichita, Kan., where they were delivered to the Missouri Pacific Railway Company, appellant herein. The Missouri Pacific Railway Company accepted and ran the cattle over its line to Sedan, a point thereon, where they

were delayed some two or three hours, and where it appears demand was made for the freight, which amount the shipper did not have and could not pay. The agent at Sedan, acting under instructions from the trainmaster, held the cattle until he could receive instructions about the freight, and after some time got instructions that Frank Witherspoon Commission Company would guarantee the freight. Witherspoon had made arrangements with the Texas & Pacific Railway Company at Colorado, Tex., to pay the freight, and the cattle had been accepted for transportation on such arrangement on that road, and were transported over all the roads up to Sedan without question. It appears that the shipper did not tell the agent at Sedan of the arrangements, and there is nothing in the evidence showing that a statement with reference thereto would have been accepted if he had so explained. In order to understand more fully the rulings and actions of the trial court, it is proper to state that the Texas & Pacific Railway Company and this appellant, the Missouri Pacific Railway Company, were both represented in the trial of the case below by the same attorney. The Missouri Pacific Railway Company received the cattle at Wichita, Kan., for transportation to Hale, after the cattle had been fed, watered, and rested, and no demand was then made for the freight, or if anything was said about the freight the record shows nothing of it. At the request of the Texas & Pacific Railway Company and the Missouri Pacific Railway Company, the court gave the following charge: "The law gives a carrier of live stock a lien for its charges for handling such shipment where such charges have not been paid, and it has the right to hold the shipment, using due care for the same until the freight charges are paid or arrangements satisfactory to it made for the payment at destination or elsewhere." The charge requested and refused asked the court to instruct the jury that the appellant had no notice of the arrangement to pay the freight. We think the court correctly refused this charge. This was a through interstate shipment, and appellant, under that law, was bound by the contract made by the initial carrier. It accepted the cattle at Wichita, Kan., and made no question as to the freight and carried the cattle on through a division point at Conway Springs, and did not demand freight, and not until the station of Sedan was reached was a demand made. There certainly were facts from which a jury could have found that appellant had notice of the arrangement. The law made the initial carrier appellant's agent, and the evidence is undisputed that such carrier had notice of such arrangements and in fact made them. Atlantic C. L. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7. The charge requested makes the shipper's failure to communicate the arrangement as to the freight to. the agent at Sedan grounds for de-

feating a recovery for the delay at that point, regardless of any negligence on the part of appellant in a failure to notify its employés of such arrangement. The charge, for that reason, we think was properly refused. Railway Co. v. Chittim, 24 Tex. Civ. App. 599, 60 S. W. 284. We think the court in giving the specially requested instruction above set out went as far as appellant could reasonably require.

[7] This demand for freight appears to have been made at an intermediate station, and with a purpose not to carry the cattle on to destination without the payment of the freight. We think the jury could have found that appellant was not using due care or ordinary care in so holding the cattle at that time and place. We understand that a railroad can hold a shipment until the freight charges are paid, but we do not think that such demand should be made at any point along the route, especially with perishable property when it is liable to suffer loss and injury. The mere fact that the shipper did not notify the station agent of the arrangement to pay the freight would not relieve the appellant from damage caused by an unseasonable demand or failure to use due care in holding the cattle, especially when there is no testimony that, if the agent had been so notified by the shipper, the cattle would have been permitted to proceed on the journey.

[8] The tenth, eleventh, and twelfth assignments complain of the action of the court in refusing to give charge No. 1, and in giving charge No. 2 of the Kansas City, Mexico & Orient Railway Company, because the jury must have considered damages to the cattle by rerouting through Wichita, Kan., instead of by Milton, and must have assessed such damages against appellant. The court, at the request of appellant, gave special charge No. 3, which in fact instructed the jury that appellant could receive the cattle at another point than Milton, and, if it advised the delivering carrier that it could not receive the cattle at Milton, the jury could not find against appellant for such extra hauling that may have been so occasioned. He also instructed the jury, at the request of the Orient Railway Company, that it could not be made liable by reason of such extra haul, and the failure to deliver at Milton. In effect, the two charges given peremptorily instructed the jury that the appellee could not recover anything for the failure to receive the cattle at Milton by appellant or the failure to deliver the same at that point by the Orient road or for the extra haul by Wichita, Kan. The jury could not have misunderstood the court upon that point. The requested charge would have added nothing more to the charge as given. The Kansas City, Mexico & Orient Railway Company has sought to appeal from the judgment against it by a pauper's oath in lieu of an appeal bond. It is suggested by appellee Cheek that this court

is without jurisdiction, in that said road has not complied with the law. The district court of Foard county convened on the 28th day of October, 1912, and adjourned on the 9th day of November, 1912. The appellant, the Missouri Pacific Railway Company, duly executed and filed its appeal bond, properly describing the judgment rendered against it, and against the Kansas City, Mexico & Orient Railway Company and made the same payable to J. F. Cheek, plaintiff, the Texas & Pacific Railway Company, the Kansas City, Mexico & Orient Railway Company of Texas and the Kansas City, Mexico Railway. The instrument or affidavit upon which the Kansas City, Mexico & Orient Railway Company seeks to appeal from the judgment to this court is as follows:

"J. F. Cheek v. Texas & Pacific Railway Company et al. No. ——. In District Court of Foard County, Texas. Comes now the defendant, Kansas City, Mexico & Orient Railway Company, in the above entitled and numbered cause, and respectfully represents that in accordance with notice heretofore legally given in this behalf, it desires to perfect an appeal from the judgment heretofore rendered against it in this court on the 28th day of October, A. D. 1912, in favor of plaintiff for the sum of $365.70, interest and costs, to the Court of Civil Appeals of the State of Texas for the Seventh Supreme Judicial District at Amarillo, but that it is unable to pay the costs of said appeal or any part thereof, or to give security therefor. L. W. Allred, Attorney for Said Defendant.

"State of Missouri, County of Jackson. Before me, the undersigned authority, on this day personally appeared Neil S. Doran, to me well known, who being by me duly sworn deposes and on his oath doth say: That the defendant, Kansas City, Mexico & Orient Railway Company, above named, is a private corporation, duly organized and existing under the laws of the state of Kansas and that affiant is its duly elected and qualified secretary, and as such duly authorized by said corporation to make this affidavit in its behalf. That the facts stated in the above and foregoing plea are true within affiant's own knowledge and belief. Neil S. Doran.

"Subscribed and sworn to before me, this the 3d day of Dec., A. D. 1912. Cary S. Denny, Notary Public. [Seal.]"

It will be noted this affidavit was made before a notary public in Jackson county, Mo. There is no certificate of the county judge or the judge trying the same showing that proof of inability to pay the costs was made before either. This affidavit, it is needless to say, does not in any particular comply with the provisions of the statute. Article 2098, R. S. 1911; Bargna v. Bargna, 123 S. W. 1143; Dixon v. Lynn, 154 S. W. 656, and authorities cited. The appeal not having been perfected as required by the statute, this court has no jurisdiction of the Kansas City, Mexico & Orient Railway Company's appeal.

[9] It therefore remains for us to determine whether we may properly consider the appellant's assignments of error. We have concluded we cannot do so. Rule 101 for district courts (142 S. W. xxiv) does not permit cross-assignments against a coappellee, but only against the appellant. The assignments made would not be sufficient to have the judgment reversed against the railway company. The Kansas City, Mexico & Orient has not appealed from the judgment against it; and, in order to entitle it to appeal from the judgment rendered against it, it must give an appeal bond or make the proper affidavit in lieu thereof. Horter v. Herndon, 12 Tex. Civ. App. 637, 35 S. W. 80; Railway Co. v. Skinner, 4 Tex. Civ. App. 661, 23 S. W. 1001. This road having failed to comply with reference to making an affidavit is before this court only as an appellee, and, as appellee, it cannot cross-assign errors against its coappellee, it must and should therefore be treated as not complaining of the judgment against it. Gillespie v. Crawford, 42 S. W. on rehearing, p. 625, and authorities cited. But, should we consider the assignments of this road, we are unable to find from an inspection thereof any material error, such as injured the rights of the road, and which would require a reversal.

[10] The charge given by the court at the request of the Missouri Pacific Railway Company, in which the jury were directed to find no damage against that road in failing to receive the cattle at Milton, Kan., with reference to the shipment to Wichita, because of the lack of facilities to feed, water, and rest at Milton, and to reach their destination within the time limit and in which the jury were instructed to find for the Missouri Pacific Railway Company any loss by reason of reshipping them to Wichita, did not injure the Kansas City, Mexico & Orient Railway Company, especially as the court charged the jury that they could find nothing against this road for loss or injury resulting from the failure of the Missouri Pacific Railway Company to receive the cattle at Milton, and the failure of this road to deliver the cattle to its connecting carrier at Milton. It certainly was not injured in this particular. Of course, if in the voyage from Milton to Wichita the cattle were injured through the negligence of this road while en route, it was not by the charge requested and given by the court in its favor relieved of its duty to transport the cattle with ordinary care and within a reasonable time. Having assumed to carry the cattle from Milton to Wichita, it again assumed the duties of a common carrier with reference thereto, and would not be relieved from acts of negligence on its part causing loss in the course of such voyage. There is sufficient evidence to show the cattle were strong enough to make the trip within the usual and ordinary time and by the use of ordinary care, without inflicting the loss sustained by the shipment. The jury had testi-

mony sufficient upon which to base the verdict found against the road and for the amount found against it. All assignments by this road, if properly before us, would be overruled.

Upon an inspection of the case, we think the trial court has carefully tried the case, and, if any errors of a material nature have been committed, they have been against appellee Cheek.

Finding no reversible error, we affirm the judgment of the trial court.