MISSOURI, K. & T. RY. CO. et al. v. WARD
et al. (No. 5282.)

(Court of Civil Appeals of Texas. Austin.
June 24, 1914. Rehearing Denied
Oct. 28, 1914.)

CARRIERS (§ 180*) — INTERSTATE SHIPMENT —
CONTRACT EXEMPTION FROM LIABILITY.

Where a contract for the transportation of an interstate shipment was made with the initial carrier, stipulations of a contract, made by an intermediate carrier while the shipment was in the course of transportation, purporting to exempt the carriers from liability unless the shippers should file a claim for damages within 30 days after the happening of the injuries complained of, being violative of Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1911, p. 1307), restricting a carrier's right to exempt itself from liability, were not enforceable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. § 180.*]

Appeal from District Court, Llano County; Clarence Martin, Judge.

Action by J. H. Ward and another against the Missouri, Kansas & Texas Railway Company and others. From judgment for plaintiffs, defendants appeal. Affirmed.

Fiset, McClendon & Shelley, of Austin, for appellants. F. J. Johnson, of Llano, for appellees.

RICE, J. This suit was brought by appellees against the Houston & Texas Central Railroad Company, the Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company, to recover damages sustained to a shipment of cattle over the lines of said companies from Llano, Tex., to Winona, Okl., alleging that said companies owned lines of railroad, which together formed a connecting, through, and continuous line from Llano, via Elgin and Denison, to Winona, over which they were engaged in transporting passengers, live stock, and freight, and that the two last-named companies were partners; that on the 23d day of August, 1912, they delivered in good condition seven car loads of cattle, consisting of 245 steer yearlings and 51 cows, at Llano, Tex., to the first-named company at its shipping pens, to be transported by it and said connecting lines to Winona, where they were to be put upon pasture and fattened, and which were received by said first-named company, which routed same, giving through rate, over the several lines of said companies, via Elgin and Denison, to Winona, which rate was paid to said first-named company by appellees at the time of shipment, whereby it became the duty of said railway companies to safely transport with reasonable dispatch said cattle to said point, but by reason of their negligent rough handling and delay said cattle were seriously injured to plaintiffs' damage. The Houston & Texas Central

answered denying liability on the ground that said cattle were shipped by it under special contract, wherein it was stipulated that they were only to transport same from Llano to Elgin, and there deliver same to appellees, or under their direction to its connecting carriers; that it was not required to transport the same in any definite time; that said cattle were carried with ordinary care and reasonable dispatch, and were delivered to appellants in good condition; and that it was guilty of no act or omission which in any way contributed to the injury of said cattle. The other two companies, after general demurrers, general denial, and denial of partnership under oath, pleaded specially that they received and shipped said cattle over their lines of railway from Elgin to Winona by virtue of a bill of lading, which, among other things, required as a condition precedent to appellees' right to recover that they should present to and file with some agent of the company sought to be held a verified claim in writing, stating the amount thereof, and that no such claim for damages was ever filed by appellees with either of said companies, which clause in said bill of lading was pleaded in bar of plaintiffs' right to recover herein. There was a nonjury trial, resulting in a judgment in favor of the Houston & Texas Central Railroad Company, but appellees recovered in different amounts against each of the last-named companies, from which judgment they have prosecuted this appeal.

The evidence shows that this shipment left Llano about noon of the 23d of August, and arrived at Winona at about 9 o'clock at night on the 26th of said month. The cattle were damaged en route by delay and rough handling on the part of appellants and defective condition of the cars. If the cattle had been shipped with ordinary dispatch, they ought to have arrived at their destination within from 36 to 45 hours; whereas, they were over 81 hours on the road. It is shown that the ordinary speed of such trains was from 15 to 20 miles per hour; that this train only made from 7 to 8 miles per hour. The cattle, on account of this delay and the rough handling and jerking, were skinned up, badly injured, many horns knocked off, seven of them died en route, and the rest of the shipment were in very bad condition upon their arrival and could not be driven from the vicinity of the station for seven or eight days thereafter. No injury is shown, however, to have occurred on the line of the first-named company; hence the finding in its favor. What is known as the 28-hour law was waived by the plaintiffs. Notwithstanding this, however, the cattle were delayed for feed and water at Ft. Worth more than five hours, and subsequently were delayed for the same purpose at another place en route for 22 hours. There is no allegation and proof that the stipulation set up by

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

appellants in their answer is contained in the contract executed by the initial carrier, the Houston & Texas Central Railroad Company, and in fact said contract does not contain any such stipulation. The undisputed testimony establishes the fact that this was an interstate shipment; that appellees made the contract with the Houston & Texas Central Railroad Company to transport this shipment from Llano, Tex., to Winona, Okl., over its line and those of its connecting companies; that appellees paid all the freight charges to said first-named company, which was a through rate to be participated in by it and the other two carriers, and received from it a receipt or bill of lading for such through shipment. The undisputed testimony likewise shows that in this shipment, the appellants were the intermediate or connecting carriers, and that the contract containing the stipulations pleaded and set up by appellants was made and executed while said shipment was in course of transportation. Appellees failed to comply with said stipulation, and in fact rely for recovery entirely upon their contract with the Houston & Texas Central Railroad Company. So that the principal question raised by this appeal is that urged in the first assignment, to the effect that the court erred in rendering judgment against appellants, because under the pleadings and uncontradicted evidence, whatever claim plaintiffs had, if any, against said appellants or either of them, was barred and not enforceable, for the reason that plaintiffs had failed to comply with the stipulation in the bill of lading providing that they should file within 30 days after the happening of the injuries or delays complained of, with some freight or station agent of appellants, their written and duly verified claim therefor, giving the amount, which provision of said bill of lading was valid and enforceable under the laws of the United States governing and regulating interstate commerce.

Appellees, however, contend, by their counter proposition thereto that, this being an interstate shipment, the contract of the initial carrier fixes the liability of the parties executing the contract, as well as that of the intermediate and connecting carriers, and under the law such connecting carriers become the agents of the initial carrier, and are charged with the duty of carrying out the contract of their principal, with no right or power to ingraft new conditions or stipulations on the contract already lawfully made and executed, binding them to fully perform their part of the contract of carriers under the terms of said contract; and the trial court did not commit any error in holding that the appellants were bound by such initial contract, and that the contract and stipulations executed and set up by appellants as a defense in this case was an act and attempt to exempt and avoid carrier liability, and was in direct violation of sec-tion 20 of the Interstate Commerce Act, generally referred to as the Carmack Amendment, citing in support of such contention the following cases: Atlantic. C. L. R. Co. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; Kansas City S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Railway Co. v. Latta, 226 U. S. 519, 33 Sup. Ct. 155, 57 L. Ed. 328; Railway Co. v. Miller, 226 U. S. 513, 33 Sup. Ct. 155, 57 L. Ed. 323; Railway Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Atchison, T. & S. F. Ry. Co. v. Word, 159 S. W. 375; Mo. Pac. Ry. Co. v. Cheek et al., 159 S. W. 427; Pecos & N. T. Ry. Co. v. Meyer, 155 S. W. 309; Chicago, R. I. & G. Ry. Co. v. Scott, 156 S. W. 294.

A careful reading of the above authorities. convinces us of the correctness of appellees' contention. The original Interstate Commerce Act of February 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154) was amended by the Act of June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1911, p. 1288). The amendment to the twentieth section of said act, known as the Carmack Amendment, reads as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it, or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: Provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment or transcript thereof."

Mr. Justice Lurton, in Adams Express Co. v. Croninger, supra, in passing upon a phase of said case involving this amendment, says:

"The significant and dominating features of the amendment are these: First. It affirmatively requires the initial carrier to issue 'a receipt or bill of lading therefor,' when it receives 'property for transportation from a point in one state to a point in. another.' Second. Such initial carrier is made 'liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it.' Third. It is also made liable for any loss, damage, or injury to such property caused by 'any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass.' Fourth. It affirmatively declares that 'no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transporta-

tion company from the liability hereby imposed.' "

In construing this act the same learned Justice in Atlantic C. L. R. Co. v. Riverside Mills, supra, 219 U. S. at page 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, says:

"The indisputable effect of the Carmack Amendment is to hold the initial carrier engaged in interstate commerce and 'receiving property for transportation from a point in one state to a point in another state' as having contracted for a through carriage to the point of destination, using the lines of the connecting carriers as its agents."

Again, on page 199 of 219 U. S., page 167 of 31 Sup. Ct., 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, of the above report, the court said:

"Along with this singleness of rate and continuity of carriage, there grew up the practice by receiving carriers, illustrated in this case, of refusing to make a specific agreement to transport to points beyond its own line, whereby the connecting carrier for the purpose of carriage would become the agent of the primary carrier. The common form of receipt, as the court may judicially know, is one by which the shipper is compelled to make with each carrier in the route over which his package must go a separate agreement limiting the carrier liability of each separate company to its own part of the through route. As a result the shipper could look only to the initial carrier for recompense for loss, damage, or delay occurring on its part of the route. If such primary carrier was able to show a delivery to the rails of the next succeeding carrier, although the packages might and usually did continue the journey in the same car in which they had been originally loaded, the shipper must fail in his suit. He might, it is true, then bring his action against the carrier so shown to have not received the shipment. But here, in turn, he might be met by proof of safe delivery to a third separate carrier. In short, as the shipper was not himself in possession of the information as to when and where his property had been lost or damaged and had no access to the records of the common carriers who in turn had participated in some part of the transportation, he was compelled in many instances to make such settlement as should be proposed. This burdensome situation of the shipping public * * * over routes including separate lines of carriers was the matter which Congress undertook to regulate."

This court further says, on page 205 of 219 U. S., page 169 of 31 Sup. Ct., 55 L. Ed. 157, 31 L. R. A. (N. S.) 7:

"Reduced to the final results, the Congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one state to be transported to a point in another involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur carrier liability throughout the entire route, with the right to reimbursement for a loss not due to his own negligence."

In Atchison, Topeka & Santa Fé Railway Co. v. Word, supra, where a similar question to the one here presented was involved, Mr. Justice Huff of the Amarillo Court of Civil Appeals said:

"If the Ft. Worth & Denver railway company was a principal in making the contract for the through shipment and received the consideration therefor, the act of the Santa Fé procuring a contract for such shipment over the same route was, as we think, without consideration and contrary to law. It was but the agent of the Denver road, and under the law was charged with the duty of carrying out the contract of its principal, with no right or power to ingraft new conditions and stipulations on the contract already lawfully executed, binding it fully to perform its part of the contract of carriage under the terms of said contract. Stipulations in the contract of the initial carrier were ineffectual in so far as not authorized by the interstate commerce act, whether for its benefit or that of the intermediate carrier. Any provision valid in the initial carrier's contract for its own benefit will therefore enure to the benefit of the connecting carrier"—citing Kansas City S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683.

In that case it is said:

"The liability of any carrier in the route * * * for loss or damage, is that imposed by the act as measured by the original contract of shipment so far as it is valid under the act," citing Adams Express Co. v. Croninger, supra, and the other cases relied upon by appellees.

Concluding, he says:

"It will be seen from the above authorities that the contract of the initial carrier is one fixing the liability of the parties executing the contract, as well as that of the connecting carrier. It follows that any contract made, or attempted to be made, by the intermediate carrier, has no binding effect with reference to the shipment while in the course of transportation. The case of Railway v. Carl, supra, appears to be authority for the shipper to sue the intermediate carrier direct. Ry. Co. v. Ray, 127 S. W. 281. And we hold that he may sue the initial carrier, together with the connecting carriers, over whose lines of road the shipment is routed, and the respective liabilities of the parties fixed in that suit."

In this case writ of error was denied by the Supreme Court; and, as the doctrine therein announced is applicable to the instant case, we think it decisive of the question here presented, and overrule the first assignment.

The remaining two assignments complain of the insufficiency of the evidence to support the judgment as against the Missouri, Kansas & Texas Railway Co. of Texas. We think the evidence is ample to support the judgment, for which reason these assignments are overruled.

Finding no error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.