# Louisville & Nashville Railroad Company *v.* Jones.

## *Injury to Stock.*

(Decided December 17, 1912.    Rehearing denied January 13, 1913. 60 South. 945.)

1. *Carriers; Discrimination; Special Service; Preference.*—Construing section 5540, Code 1907, in connection with the Federal Acts upon the subject, it is held that an agreement by a common carrier in advance of issuing its bill of lading to hold a certain train at a certain time and place to receive a shipment of live stock is an unreasonable preference and void.

2. *Same; Right to Damages.*—When section 5540, Code 1907, is constructed with the Federal statutes on the subject, a special contract made by a carrier to hold a certain train a certain time and place for the convenience of the shipper of live stock is void, and the shipper cannot recover damages for the breach of such a contract.

3. *Same; Live Stock; Delay; Complaint.*—Where a complaint for delay in delivering live stock bases the right of recovery on the breach by defendant of a contract to transport the stock on a certain train, the fact that such a contract was not made or was subsequently modified, or merged into another contract was defensive matter, and the failure to allege it in the complaint did not render the same demurrable.

4. *Pleading; Form and Allegation.*—Unless it follows the form prescribed by the Code for pleading some specific defense to some specific action, a plea should state the facts relied on as a defense to the action and not the mere conclusion drawn by the pleader from the facts within his knowledge.

5. *Negligence; Contributory Negligence.*—To be available as a defense, contributory negligence must be pleaded.

6. *Appeal and Error; Harmless Error; Plea.*—Where a special plea sets up a defense which may be shown under the general issue, the court will not be put in error for sustaining a demurrer to such plea.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Action by T. U. Jones against the Louisville & Nashville Railroad Company for breach of contract to transport live stock. Judgment for plaintiff and defendant appeals. Reversed and remanded.

MALLORY & MALLORY, GEORGE W. JONES, and J. MANLY FOSTER, for appellant. The special contract alleged is violative of section 5540, Code 1907, and the Federal Statutes covering that subject, and hence cannot be made the basis of a claim for damages.—*Chicago & Alton Ry. Co. v. Kirby,* U. S. Sup. Ct. July 1, 1912; 3 Fed. St. Ann. 816. In absence of specific agreement in bill of lading, the carrier is not required to ship on any particular train, but only within a reasonable time.—Elliott on Railroads, 2nd Edition, sec. 1555; Elliott on Railroads, sec. 1423; Hutchinson on Carriers, 2nd edition, sec. 328; Hutchinson on Carriers, 3rd edition, sec. 651. No prior agreement is admissible in evidence unless set out in bill of lading.—*L. & N. v. Williams,* 58 South. 315; *L. & N. v. Fulgham,* 91 Ala. 555; *Tallassee Falls Mfg. Co. v. Western Ry.,* 117 Ala. 520; *McTyer v. Steel,* 26 Ala. 487; Elliott on Railroads (2nd edition), sec. 1423; Hutchinson on Carriers (3rd edition), secs. 167 and 168. The above rule applies to implied terms as well as to those specifically set out in contract.—See

above cited authorities, also Elliott on Railroads, sec. 1423; Hutchinson on Carriers (2nd edition), sec. 126 A; *Able v. Gunter,* 57 South. 464. Owners negligence in shipping directions as defense for delay.—*Sou. Ex. Co. v. Kaufman,* 25 Amer. Rep. 451; Elliott on Railroads (2nd edition) sec. 1422 and authorities in note 44.

PETTUS, FULLER & LAPSLEY, for appellee. The court was not in error in permitting the introduction of evidence going to show the special contract or agreement to carry the stock upon a particular train.—*Roquemore v. Vulcan I. W. Co.,* 151 Ala. 650. The case of *L. & N. v. Williams,* 56 South. 865, cited and relied on by appellant not on all fours with this case, but really has no application. The court properly overruled demurrers to counts A and B.—Hutchinson on Carriers, secs. 172 and 174. There was no waiver of the right to sue upon this breach of the special contract because a bill of lading was afterwards accepted.—39 N. E. 523; 29 S. W. 565; 37 N. E. 280; 12 S. E. 892; 74 Mo. 364. The questions decided in the case of *Chicago & Alton Ry. Co. v. Kirby,* 32 Sup. Ct. Rep. 648, is not decisive of this case, since our statutes specially provide that preference may be given shippers of live stock or perishable property.— Sections 5538 and 5539, Code 1907. If section 5540 is not simply a penalty statute, then it is unconstitutional and void for uncertainty.—35 S. W. 129; 46 S. W. 700.

PER CURIAM.—This suit was brought in the city court of Selma for the recovery of damages which the plaintiff (appellee here) alleges in his complaint he suffered by reason of certain injuries which certain of his stock received while being transported by the defendant (appellant here), as a common carrier for hire, from Montgomery, Ala., to Bessemer, Ala. The

plaintiff, it appears, lives in Selma, and desired to ship certain of his stock to Bessemer, via Montgomery. The Western Railway of Alabama is a common carrier of freight between Selma and Montgomery; but it is not a common carrier of freight between Montgomery and Bessemer. It appears that the Louisville & Nashville Railroad Company runs a freight train, known as train 78, between Montgomery and Birmingham, a point near Bessemer, and that this particular freight train is scheduled to leave Montgomery for Birmingham before the arrival of an early morning freight train over the Western Railway of Alabama at Montgomery. The shipment was made in warm weather; and, as the plaintiff desired his stock (which were being shipped to be exhibited at a fair at or near Bessemer) to make the journey from Selma to the point of their destination in the cool hours of the morning, he entered into negotiations with the proper representatives of the Louisville & Nashville Railroad Company to have train No. 78 held in Montgomery until the arrival of the train from Selma over the Western Railway. The negotiations finally resulted in an agreement on the part of the defendant with the plaintiff that it would hold train No. 78 for the stock. Thereupon the plaintiff shipped the stock to Montgomery over the Western Railway Company, and they arrived there at 8:20 a. m.; the plaintiff being on the train with them. The stock was consigned to the plaintiff, under the bill of lading issued by the Western Railway, at "Ala. Agricultural & Ind. Exposition, Montgomery, Alabama." The jury were authorized to find, from the evidence, that when the plaintiff reached Montgomery with his stock, as above stated, he at once went to the general freight office of the defendant at that place and notified the official of the defendant, authorized to act for and bind the defendant in

such matters, of the arrival of the stock; that he asked said official if said train 78 had been held for said stock, and was informed by him that this had been done; that he exhibited to said official the telegram above referred to; and that upon the promise and assurance of said official that said stock would be carried from Montgomery on said train 78, and acting solely upon such promise and assurance, the plaintiff paid to the defendant the freight charges on said stock from Montgomery to Bessemer, and accepted from it a bill of lading, containing the usual and customary stipulations contained in bills of lading issued by common carriers for the carriage of live stock, and in the bill of lading the defendant contracted to deliver the stock to the plaintiff at Bessemer, Ala. The jury were also authorized to find, from the evidence, that, after receiving the above bill of lading and the assurance that his stock would be taken from Montgomery on train 78, the plaintiff left Montgomery on a passenger train for Birmingham, Ala., which was scheduled to arrive, and which on said day did arrive, at Birmingham ahead of train 78; that, when train 78 arrived at Birmingham, he for the first time learned that said train left Montgomery without his stock; that his stock was brought to Birmingham on a train which left Montgomery several hours after the departure of train 78; that some of the animals were dead when they did arrive; and that plaintiff's damages amounted to a sum equal to that for which the jury gave the plaintiff a verdict against the defendant.

2. The complaint, as originally filed, contained three counts. To the complaint, by amendment, were subsequently added two other counts (A and B). These last counts base the plaintiff's right of recovery upon the breach by the defendant of its contract to transport the stock on said train No. 78. Both of these counts allege

that the plaintiff's damages were proximately caused by the defendant's said breach of said contract. If the contract set out in these counts was not made, or if it was made, and was subsequently changed, modified, or merged into another contract, this was defensive matter, and this situation, if it really existed, did not render the counts demurrable on that account. The defendant's demurrers to these counts were, in reality, speaking demurrers; and, while they anticipated the principal point of controversy between the parties, the demurrers to these counts were properly overruled.

3. A plea, unless it follows a form prescribed by the Code for pleading a specific matter of defense to some specific action, should state the facts relied upon for a defense to the action, and not the mere conclusion which the pleader has drawn from the facts in his possession.

It is also a familiar proposition that, when a special plea sets up, as a defense to an action, facts which may be given in evidence and relied upon as a defense to the action under the plea of the general issue, the trial court will not be put in error for sustaining a demurrer to such plea. For the reasons above given, the trial court was without error in sustaining the plaintiff's demurrer to special pleas B, C, D, and E, filed in this cause by the defendant.

4. The real question in this case is whether, under the evidence, the bill of lading which was delivered by the defendant to the plaintiff in Montgomery, and which bill of lading was accepted by the plaintiff under the representation of the defendant that his stock would leave Montgomery on the above-mentioned train No. 78, was the sole repository of the contract of shipment, thereby precluding the evidence of the plaintiff that the defendant had agreed to hold said train until the arrival of his stock from Selma and carry that stock to Birmingham on said train.

The Supreme Court has often recognized and enforced the general rule that, when a bill of lading is issued by the carrier and accepted by the shipper before, or contemporaneously with, the delivery by the shipper of the freight to the carrier for shipment in the ordinary course of such business, such bill of lading becomes the sole repository of the contract of shipment, and cannot be altered, or contradicted by parol evidence. This doctrine was recently announced and enforced by the Supreme Court in *L. & N. R. R. Co. v. Williams,* 58 South. 315, in which an opinion of this court, prepared by the writer of this opinion, was declared to be in conflict with the settled doctrine of this state as declared by the Supreme Court.—*L. & N. R. R. Co. v. Williams,* 5 Ala. App. 615, 56 South. 865; *L. & N. R. R. Co. v. Williams,* 58 South. 315.

The above decision of the Supreme Court, as well as many other cases and text-books, recognize that the foregoing rule does not necessarily prevail when the bill of lading is issued after the shipment of the goods under a previous contract. In *L. & N. R. R. Co. v. Williams, supra,* the cotton was delivered to the initial carrier contemporaneously with the issuance and acceptance of the bill of lading, and it was sought to hold the initial carrier for a default of a connecting carrier, when the bill of lading expressly exempted the initial carrier from such default, and the Supreme Court held that all prior negotiations between the shipper and the initial carrier were merged in the contract of shipment; that the bill of lading was the sole repository of the contract; and that any prior statement, declaration, or assurance, on the part of the initial carrier, that its connecting carrier would transport the cotton by a particular steamer on a named sailing could not be shown. In the instant case, before the bill of lading was issued

and accepted, the plaintiff exhibited the telegram to that official of the defendant, who was authorized by the defendant to issue it, and that official, at the time of the issuance and acceptance of the bill of lading, informed the plaintiff that train 78 was being held for said stock, and that the stock would go on that train. Upon the faith of this statement, the plaintiff paid the freight and accepted the bill of lading. The plaintiff could have shipped his stock to Birmingham over a route other than over the defendant's route. The defendant knew that fact, and it knew that the plaintiff shipped it over the Western Railway to Montgomery upon the faith of its agreement to hold train 78 until the arrival of the Western train at Montgomery, and that it would carry that stock on said train 78 from Montgomery. The stock were in transit from Selma to Bessemer, via Birmingham, upon the faith of defendant's agreement, above referred to, when the bill of lading was issued; and, as the bill of lading was issued while the stock were in transit, the rule announced in *L. & N. R. R. Co. v. Williams, supra,* does not necessarily control, and the bill of lading, issued as above stated, did not necessarily become the sole repository of the contract of shipment. When the stock left Selma, the plaintiff had two separate, independent contracts, one with the Western Railway Company to transport the stock to Montgomery, and the other with the defendant to transport the stock from Montgomery to Bessemer; via Birmingham, on train No. 78. A bill of lading is usually issued by the initial carrier before or at the time of the receipt of the freight for shipment; and when so issued, under the decisions of our Supreme Court, it certainly, as a general rule, becomes the sole repository of the contract of shipment; but, when not so issued, the question as to whether it is the sole deposi-

tory of the contract becomes a question of fact, and the facts of each particular case must determine that question.

It was fully understood between the plaintiff and the defendant, before the stock left Selma, that there was to be, in fact, one continuous, uninterrupted carriage of the stock from Selma to Bessemer, via Montgomery and Birmingham; that, upon the arrival of the stock in Montgomery, the car in which they left Selma was to be immediately taken up by the defendant and attached to its train 78, and at once proceed on its journey. The issuance and acceptance of the bill of lading, under these circumstances, and under the assurances which plaintiff received from defendant's agent when the freight was paid and when the bill of lading was accepted, did not, as matter of law, render the bill of lading, which was silent as to what train the stock should go on, the sole repository of the contract. It was at least a question for the jury, under the facts of this case, to say whether the bill of lading was issued and received as applying to the particular train 78, which was to be held to get the stock, and which was, as plaintiff was informed, when he accepted the bill of lading, in the yards ready to take the stock to Birmingham.—Elliott on Railroads, § 1423, and cases cited in note 47.

If, when the plaintiff shipped his stock from Selma to Bessemer, via Montgomery and Birmingham, the Western Railway Company had issued to him and he had accepted a bill of lading through from Selma, via Montgomery and Birmingham, and this suit had been brought against the Western Railway Company for the failure of the Louisville & Nashville Railroad Company, a connecting carrier, to carry the stock to Birmingham on train 78, then a situation somewhat similar to the situation which prevailed in

the case of *L. & N. R. R. Co. v. Williams, supra,* would have existed. This situation does not obtain, however, in the present case; and for that reason the rule announced in *L. & N. R. R. Co. v. Williams, supra,* does not control the real issue presented by this record. In our opinion, therefore, the trial court committed no error in admitting the telegram, to which we have referred, and the other evidence offered by the plaintiff, tending to show a contract on the part of the defendant, made prior to the issuance and acceptance of the bill of lading to transport the stock from Montgomery to Birmingham on train No. 78.

5. The defense of contributory negligence, to be made available to a defendant, must be specially pleaded. In this case there was no plea of contributory negligence; and for that reason charge 6, requested in writing by the defendant, was properly refused.

6. We cannot hold that the trial court erred in overruling the defendant's motion for a new trial. It was open for the jury, under the evidence in this case, to find that the defendant undertook to take the hogs from Montgomery on train 78, and that its failure so to do was the proximate cause of the injury to the animals.

The judgment of the court below is affirmed.

Affirmed.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED while he was a judge of this court, and is adopted by the court.

## On Application for Rehearing.

PER CURIAM.—Since the foregoing opinion was handed down, there has been published the opinion of the Supreme Court of the United States in the case of *Chicago & Alton R. R. Co. v. Nathaniel T. Kirby,* report-

ed in 225 U. S. 155, 2 Sup. Ct. 649, 56 L. Ed. 1033, which has been brought to our attention for the first time on application for rehearing. Under the construction there given to the federal statute, substantially identical with the Alabama statute (Code, § 5540), the special contract relied on for recovery in this case is void, provided we follow that opinion in the construction of the state statute. This, we feel, we should do.

The state statute (Code, § 5540) thus reads: "If any railroad company or other common carrier shall directly or indirectly make or give any undue or unreasonable preference or advantage to any particular person, firm, corporation, or locality, or subject any particular person, firm, or corporation, or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever, such railroad or common carrier shall be guilty of unjust discrimination, which is hereby prohibited and declared unlawful, and shall be liable to the state in a penalty of not less than five hundred dollars, nor more than five thousand dollars for each offense." And the kindred section of the federal statute, from which ours was evidently borrowed, thus reads: "That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatever."—Volume 3, Fed. Statutes, annotated.

The headnotes of the aforementioned decision of the United States Supreme Court, construing the above statute, make it clear, without further quotation, that

the facts of the case there considered are so materially similar to those here that the identical question which confronted them now confronts us. The first and second headnotes of that opinion, which we quote below, sufficiently indicate this, to wit: First, "An undue and unreasonable preference forbidden by the Act of February 4, 1887 (24 Stat. at L. 379, c. 104 [U. S. Comp. Stat. Supp. 1911, p. 1284] §§ 3, 6, and the Act of February 19, 1903 (32 Stat. at L. 847, c. 708 [U. S. Comp. St. Supp. 1911, p. 1309]), is accorded a shipper by a special agreement by which a carrier undertakes to expedite a car load shipment of horses over its own lines, so that it will reach the point of connection with the next carrier in time to be carried by a special fast stock train leaving that point the next morning; the shipper being charged the regular established joint through rates, which made no provision for such special service." Second. "A shipper cannot recover damages for a breach of the carrier's special agreement by which, contrary to the act of February 4, 1887, §§ 3, 6, and the Act of February 19, 1903, it undertook, for the regular established joint through rate, to expedite a car load shipment of horses over its own line, so that it would reach the point of connection with the next carrier in time to be carried by a special fast stock train, although the shipper did not see or know that the established rates and schedules made no provision for such special service."

Upon this authority, the application for rehearing is granted, and the cause is reversed.

Reversed and remanded.