# Nashville, C. & St. L. Ry. *v.* Farell & Braley.

### Injury to Stock in Transit.

(Decided November 23, 1915. Rehearing denied January 11, 1916. 70 South. 986.)

1. **Actions; Joinder; Contract or Tort.**—Where the cause of action arises out of the same transaction or relates to the same subject matter, a complaint may properly contain a count ex contractu and one ex delicto, under the direct provision of § 5329, Code 1907.

2. **Carriers; Goods; Live Stock; Contract; Proof.**—Where the complaint alleged that defendant by the contract of carriage agreed not to unload the stock at Nashville, Tenn., which contract the railroad failed to keep, as a result of which the stock were exposed to pleural pneumonia, and part of them contracted the·disease and died, it was incumbent upon plaintiff to prove that the contract contained the stipulation alleged in regard to the unloading, in order for plaintiff to recover.

3. **Same; Acceptance of Offer.**—Where the agent of the railroad informed the shipper of live stock, who desired to avoid unloading for resting and feeding as required by the Federal statute, that the shipment might be made from a particular town to avoid unloading, it was not an acceptance of such offer to ship the stock from a town in another state on a through bill

[Nashville, C. & St. L. Ry. v. Farell & Braley.]

of lading, containing no such stipulation, issued to an agent of the shipper as consignor by another carrier as initial carrier, and without notifying the defendant railroad, and without agreement with it that the step should be taken.

4. Same; **Evidence.**—Where live stock was shipped from a town in Kentucky on a through bill of lading which contained no stipulation that the stock should not be unloaded at Nashville, Tenn., for resting and watering, and the bill of lading was issued by an initial carrier, such bill of lading was the only repository of the contract of shipment, and the conversation between the agent of the railroad and the shippers in which the railroad agent offered to transport without unloading, was not competent evidence to vary the terms of the bill of lading.

5. Same; **Injury.**—Where a railroad knew or had notice that its stockyard was infected with a contagious disease in time to have remedied the conditions, or to have provided another place for feeding, watering and resting live stock in transit as required by the Federal statute, yet received stock for transportation which being put off in the infected yard, contracted the disease and was injured thereby, the road was liable.

6. Same; **Refusal of Shipment.**—A railroad can decline to accept a shipment of live stock by showing that, at the time of tender of shipment, its stock yards where stock are required to be put off for feed and resting under the Federal statute, is infected with a contagious disease, which condition defendant had not had reasonable time to remedy.

7. Same; **Avoidance of Federal Statute.**—Where a carrier had placed live stock in an infected yard for resting and watering during transit, and they were damaged thereby, it cannot escape liability, although the putting in the yard was the only means available to the carrier to avoid violating the Federal statute requiring resting, watering and feeding during transit.

8. Same; **Evidence.**—The evidence examined and held to show or justitfy the finding that the yard was infected shortly before the shipment was made.

9. Same; **Negligence.**—Where the shippers of live stock from a point in Kentucky informed the agent of the connecting carrier at a point in Tennessee, on the day before the initial carrier delivered the shipment to the connecting carrier, that such connecting carrier's stockyard at Nashville was infected, the information was sufficient to put the connecting carrier on notice or inquiry as to the condition of its yards, rendering it negligence on its part to unload the shipment at such yard for feeding and watering, without investgiation.

10. Same; **Jury Question.**—In this case it was a question for the jury whether plaintiff was entitled to recover under a count in the complaint declaring on defendant's negligence as a common carrier in violation of its legal duty.

11. **Appeal and Error; Review; Reversal.**—Where the verdict is general, not stating the count on which it is rendered, and the complaint contains two counts, one of which is not supported by the evidence, the refusal of the affirmative charge as to that count must work a reversal, since the court cannot know but what the verdict was predicated upon that count.

APPEAL from Madison Circuit Court.
Heard before Hon. D. W. SPEAKE.

Action by Farell & Braley against the Nashville, Chattanooga & St. Louis Railway for damages for injuries to stock in transit. Judgment for plaintiffs and defendants appeal. Reversed and remanded.

SPRAGINS & SPEAKE, for appellant. DOUGLAS TAYLOR, and CLARENCE L. WATTS, for appellee.

THOMAS, J.— (1) The complaint as amended contained two counts, one ex contractu and the other ex delicto, as is now authorized by statute.—Code, § 5329. The first counted upon a breach by the defendant, as a common carrier, of an express provision of the contract of carriage, and alleged, so far as is material to the consideration of the questions raised on this appeal, as follows: "That on, to-wit, the 11th day of March, 1913, the defendant was operating a railroad and engaged in the business of a common carrier, and on said date entered into a contract with plaintiff to carry 25 mules and one horse, the property of plaintiffs, from Martin, Tenn., to Huntsville, Ala., for hire, and by the terms of said contract, and as a part of the consideration thereof, said defendant agreed that said mules and horses were not to be unloaded in Nashville, Tenn., and plaintiffs aver that, in violation of said stipulation in said contract above set out, defendant unloaded said mules and horses at Nashville, Tenn.; that while unloaded there said mules and horse were exposed to pleural pneumonia, a contagious or infectious disease, and four head of said mules contracted said disease and afterwards died from the same."

The second count declared upon the negligence of defendant as a common carrier in violation of an implied duty imposed by law and arising from the relationship of plaintiff and defendant as shipper and carrier, respectively, as shown in the count, which averred, so far as pertinent to the points reserved, as follows: "That on, to-wit, the 11th day of March, 1913, the defendant was operating a railroad and engaged in the business of a common carrier, and on said date accepted from plaintiffs for transportation for hire, from Martin, Tenn., to Huntsville, Ala., 25 mules and 1 horse, the property of plaintiffs. Plaintiffs aver that while said mules were in the possession of said defendant, for transportation as aforesaid, said defendant negligently exposed said animals, or negligently allowed said animals, or some of them,

to become exposed to pleural pneumonia, a contagious or infectious disease, and as the result of said exposure 4 of said mules contracted said disease and died of same," etc.—*Southern Railway Co. v. Proctor,* 3 Ala. App. 413, 57 South. 513.

The defendant, which is apellant here, pleaded, in short, by consent, the general issue, with leave to give in evidence as a bar to the action any matter that might be specially pleaded, and at the conclusion of the evidence requested the general affirmative charge, separately and severally as to each count of the complaint, the refusal of the court to give which in each instance constitutes the chief ground of defendant's insistence upon error.

(2-4) It cannot be doubted that, in order for the plaintiffs to recover under the first count of the complaint, it was incumbent upon them to prove that the contract of carriage contained the stipulation as alleged in said count, since such stipulation is the very basis and gist of the right of action declared on. The plaintiffs insist that the contract of carriage with defendant was a parol one, and that it contained the stipulation mentioned; and, while the evidence offered by plaintiffs tended to show that, on the day before the shipment was made, one of the plaintiffs, Braley, who had purchased the stock for the plaintiffs, at Fulton, Ky., a town 12 miles from Martin, Tenn,. went from said town down to Martin, Tenn., where defendant's line of railway commenced, and told defendant's agent that he (Braley) wanted to ship his stock home to Huntsville, Ala., over defendant's line, provided defendant could get them through without stopping them at Nashville, Tenn., and putting them off of the cars at the stockyards there for feeding, watering, and resting, which was defendant's custom as to interstate shipments, followed by it in order to avoid a violation of the United States statutes (Fed. Stat. Anno. Supp. 1909), prohibiting under penalty common carriers from confining stock constituting an interstate shipment in cars for a longer period than 36 hours, without putting them off and watering, feeding, and resting them; and, while the plaintiff's evidence also tends to show that defendant's said agent then told said Braley that if he (Braley) would wait until the next day, at an hour named, to make the shipment, it could be gotten through to Huntsville over defendant's "Green Line," agreeable to the statutes mentioned, without stopping and putting the stock off at Nashville, yet, the evidence fails to show an acceptance by plaintiff of this proposition made by the defend-

ant's said agent, but shows without dispute that Braley proceeded home to Huntsville, and that the stock were afterwards shipped, not from Martin, Tenn., but from Fulton, Ky., and not by plaintiffs, but by one E. C. Reed, on a through bill of lading issued to him as consignor, not by the defendant, but by the Illinois Central Railroad Company, as initial carrier, and that at Martin, Tenn., the shipment was delivered by said initial carrier to the defendant as connecting carrier, who accepted it on said through bill of lading, which did not contain any stipulation with reference to not putting the stock off at Nashville, and which contained nothing to indicate or apprise defendant or its agents that this was the shipment to which said Braley had reference in his alleged conversation with defendant's said agent, as before mentioned. Under this through bill of lading, the defendant, as connecting carrier, accepted the shipment and transported and delivered the stock to plaintiffs Farrell & Braley, as consignees, at Huntsville, in apparent good order, though it appears the shipment was stopped at Nashville, and the stock there put off, watered, fed, and rested for the purpose of complying with the federal statutes cited. While it does appear from the evidence that E. C. Reed, the consignor as named in said through bill of lading, was plaintiffs' agent in making the shipment, yet the bill of lading did not so disclose, and there was nothing in it, and nothing in the evidence, to show that defendant knew this fact, or any other fact which would reasonably be calculated to lead it or its agents to identify the shipment as being the shipment which said Braley had in the conversation mentioned previously talked with defendant's agent about making. It may be said in passing, however, that said agent denied having any such conversation as that claimed by said Braley; but, even assuming that he did, he had a right to expect what the offer, as we interpret it, clearly contemplated, that the stock were to be delivered to defendant at Martin, Tenn., as a new shipment there to be commenced, so that they would not be on a continuous journey without watering, feeding, and resting for a period longer than that forbidden by the federal statutes mentioned. Certainly it was no acceptance of the offer to ship the stock from Fulton, Ky., on a through bill of lading containing no such stipulation, issued to another party as consignor and by another carrier as initial carrier, and without notifying defendant and without agreement with it that this was to be done. The plaintiff, in order to have

gotten the benefit of the offer as made, should have brought the stock through the country from Fulton, Ky., to Martin, Tenn., a distance of 12 miles, where defendant's line commenced, and there have delivered them to defendant for the commencement of the journey by rail, or, in event he chose to ship them from Fulton to Martin, he should have done so on a bill of lading from the former to the latter point only, and then at the latter point have had them unloaded, fed, etc., and delivered to defendant in such a way as to constitute them a new shipment—one commenced at Martin, Tenn. (*Louisville & N. R. R. Co. v. Jones*, 6 Ala. App. 617, 60 South. 945)—so that the time of their continuous confinement in the car until they reached their destination at Huntsville would have dated, not from the time they were delivered to the initial carrier at Fulton, but from the time they were delivered to defendant at Martin. If they had been received by defendant under such circumstances, then there might be room for contending that they were accepted under the terms of the verbal offer, and that it should control (*Louisville & N. R. R. Co. v. Jones, supra*) ; but when the plaintiff chose, as he here did, to commence the shipment at Fulton on a through bill of lading issued by another carrier, it cannot be said that he thereby accepted defendant's verbal offer, although in the course of the journey, the shipment passed over defendant's line as a connecting carrier. This conduct on plaintiff's part conclusively shows an abandonment of the verbal contract, even if it may be said that the conversation mentioned amounted to such. Under the facts of this case, the bill of lading is the sole repository of the contract of shipment, and the mentioned conversation between Braley and defendant's agent cannot avail to alter or vary its terms.—*Ex parte L. & N. R. R. Co.*, 176 Ala. 668, 56 South. 1030, where the Supreme Court, on certiorari, reversed the case of *L. & N. R. R. Co. v. Williams*, 5 Ala. App. 615, 56 South. 865, 59 South. 673. See, in connection, *Louisville & N. R. R. Co. v. Jones, supra.* The bill, as said, contains no such stipulation as that alleged in count 1 of the complaint; consequently the plaintiff wholly failed to make out his case as declared on in said count. The court erred, therefore, in refusing to defendant the affirmative charge as to count 1.

(5-10) Defendant's liability under the second count, which, as before pointed out, was for negligence in breach of a duty imposed by law in exposing plaintiff's stock to the contagious

disease mentioned by putting them off at the stockyard in Nashville for feeding, watering, and resting, depends upon several conditions, to-wit: First, was said stockyard actually infected with the disease mentioned? second, did plaintiff's stock contract the disease from being put off in said yard? third, did defendant know, or have notice, of the infected condition of the yard and of the contagious character of the disease in time to have remedied such condition, or in time to have provided another place for feeding, watering, and resting the stock in compliance with the statutes mentioned? If such condition existed and defendant knew or had notice of it, or knew or had notice of the contagious character of the disease before it (defendant) received the stock for transportation, then it was its duty to decline to receive them until it could by proper diligence, remedy the condition or provide another place for feeding, watering, and resting the stock, in compliance with the statute. A suit against it for declining to accept the shipment could, we think, have been well defended by showing that, at the time of the tender of shipment, the condition mentioned existed, and that the carrier had no knowledge or notice of it in time to have, before the tender, remedied the condition, or in time to have provided facilities elsewhere for feeding, etc., the stock as required by the statute.— 5 Am. & Eng. Ency. Law (2d Ed.) 159. If the condition existed and the carrier knew or had notice of it before the stock were received and, without remedying it or providing facilities elsewhere, accepted the stock for transportation, then it could not escape liability for putting them in such yard, if, as a result, they contracted the disease, although it be that putting them in the yard was the only means then available the carrier had of avoiding a violation of the statute referred to. While the evidence is in serious conflict and dispute, there is evidence from which, if believed by the jury, they might have inferred the infected condition of the stockyard at a time shortly before the shipment in question, because the plaintiffs testified that at that time they saw stock in the yard suffering from the disease— pleural pneumonia—from which their stock concededly died, and which developed in them, it appears without dispute, within a few days after the stock were delivered to plaintiffs by defendant, and within the time, as shown by the experts, it would likely develop if the germ of the disease was taken into the systems of the stock at said stockyard. Plaintiffs' evidence further tended

to negative any inference of an exposure of plaintiffs' stock to the disease previous or subsequent to putting them in the stockyard mentioned; and to show that stock with the disease, as plaintiff testified he saw in the stockyard in question, suffered discharges from the nose which would fall in the feeding troughs and on the ground and infect other animals that might subsequently come in. The plaintiffs' evidence, though disputed, further tends to show that plaintiffs informed defendant's agent and manager at Martin, Tenn., on the day before the initial carrier delivered to defendant the plaintiffs' stock, that the disease mentioned existed at the stockyard at Nashville, and that he (plaintiff) wanted to get his stock home—to Huntsville—without their being unloaded in those yards. We think this information, if the jury believe it was imparted to defendant's said manager and agent, which the latter denies, was sufficient to put the defendant to inquiry and to necessitate an investigation on its part; and, if it failed, as is undisputed it did, to make such investigation and went ahead, notwithstanding the information received, and put plaintiff's stock in said yard, then this would be negligence, and the plaintiffs would be entitled to recover, provided the jury further believed that the yard was in fact infected, a question also in dispute, and provided they further believed that plaintiffs' stock contracted the germs of the disease in said yard, which plaintiffs' evidence tended circumstantially to show that they did. The evidence for the plaintiff, positive as to some facts and circumstantial as to others, was sufficient, we think, to justify the court in refusing the affirmative charge as to count 2, thereby leaving it to the jury to determine the controverted questions of fact and the conflicting inferences to be drawn from circumstances proved. What we have said is sufficient to dispose of all the questions raised in the case.

(11) For the error of the court in refusing the affirmative charge as to count 1 the case must be reversed, since the verdict was a general one, not stating the count upon which it was found, and, for all we could say to the contrary, was predicated upon the belief by the jury of a contract on defendant's part not to unload the stock at Nashville, rather than upon a belief of any negligence on defendant's part in doing so.

Reversed and remanded.