This appeal comes from the Circuit Court of Etowah County. Katrina Hunter brought suit against Southern Mobile Homes, Inc., a corporation, and Gary Chandler individually for damages resulting from the disintegration of a mobile home purchased from the defendants. The complaint contained three counts: the first alleged fraud based on misrepresentations made to Mrs. Hunter by the defendants with regard to the condition of the mobile home; the second alleged breach of a statutory duty and an implied duty on the part of the defendants to exercise good faith in their dealings with Mrs. Hunter; and the third alleged breach of an implied warranty of fitness for a particular purpose.
At the close of the evidence, the defendants moved for a directed verdict on all three counts, stating grounds for the motions, and Gary Chandler individually moved for a directed verdict as to all three counts. All motions were denied. The jury returned a general verdict against Mr. Chandler only for $3,000, and he appeals from that judgment.
The facts appear from the record to be as follows. Sometime in December 1975 Mrs. Hunter and her mother visited the lot of Southern Mobile Homes, Inc., and Mrs. Hunter selected a mobile home. During the course of conversation with Gary Chandler, the president of Southern Mobile Homes, Mrs. Hunter told Chandler that she could not afford the mobile home but that Donald E. Truett, her former husband, would buy it for her. Mr. Chandler drew up the necessary papers and the following day Mrs. Hunter returned with Mr. Truett to Southern Mobile Homes. Mr. Truett signed the papers, including a UCC-1 financing statement, thereby purchasing a Royal mobile *Page 820 
home in his name. Mrs. Hunter signed no papers and incurred no obligation or liability for the indebtedness on the trailer.
A 1969 Craftsman mobile home was traded on the purchase of the Royal mobile home. Mrs. Hunter had been living in that mobile home, but Mr. Truett had been making the mortgage payments on it and that mobile home was owned solely in his name. The monthly payments on the Craftsman mobile home were made pursuant to a decree divorcing Mr. Truett and Mrs. Hunter and requiring that payments on the mobile home be made in lieu of child support payments. Mrs. Hunter and Mr. Truett intended between themselves to continue the arrangement under the divorce decree on the new Royal mobile home, with Mr. Truett making payments on the mobile home directly to the mortgagee rather than to Mrs. Hunter. It is unclear whether Mr. Chandler understood this arrangement. However, he did know that Mrs. Hunter was to live in the mobile home and that Mr. Truett was purchasing it for her.
At the time of the sale of the Royal mobile home to Mr. Truett, Southern Mobile Homes was a corporation and Mr. Chandler was its president. Chandler did not sell mobile homes for himself individually. The checks written, the bill of sale on the Craftsman mobile home, and all other papers regarding the sale were made in the name of the corporation.
There was conflicting testimony as to what representations were made about the Royal mobile home. Mrs. Hunter testified that Mr. Chandler told her that the mobile home was well built, that the cabinets were "real good" and would not warp, that he personally "stood behind" the mobile home, and that there was a one year warranty on the mobile home. Mrs. Hunter's mother stated that Mr. Chandler had said that new mobile homes carry a one year warranty, while used mobile homes are guaranteed only for ninety days. He also said that he "always backs up" his mobile homes. The Royal mobile home selected by Mrs. Hunter was new at the time.
Mr. Chandler admitted he said that the mobile home was well built, but denied he personally guaranteed the mobile home. He further testified he told Mrs. Hunter only that the mobile home carried a manufacturer's warranty for ninety days and that the appliances were guaranteed by their various manufacturers for one year.
The damage began with delivery of the Royal mobile home. A taillight was smashed and one side of the mobile home was creased. Nonetheless Mrs. Hunter moved in. Thereafter things began to fall apart. The front storm door either fell off or was blown off by wind. The dishwasher did not operate properly and could not be used. The carpet pulled away from the walls. Several doors fell off their hinges. The ceiling in one bedroom fell in, was replaced by Mrs. Hunter, and fell in again. The kitchen ceiling was in the process of falling. Cracks up to half an inch wide appeared in the walls. Wind blew through cracks in the windows. The window in the bathroom shower rotted away and the toilet lid cracked. Several doors to the kitchen cabinets fell off and some of the cabinets came loose from the wall. The frost-free refrigerator did not operate properly.
Mrs. Hunter continued to live in the mobile home for twelve months after its purchase. Mr. Truett made all the monthly mortgage payments with the exception of one payment made by Mrs. Hunter. After twelve months Mrs. Hunter moved out of the trailer and let it be repossessed. She then brought this action to recover damages.
Mr. Chandler contends on appeal that the trial court committed reversible error in denying the defendants' motion for directed verdict (1) as to the fraud count because there was no proof of privity of contract between the parties, since the contract was between Donald E. Truett and Southern Mobile Homes, (2) as to the count of failure to deal in good faith because Title 7A, Section 1-203, Code of Alabama 1940 (Recomp. 1958), is not ground for a cause of action in Alabama, and (3) as to the contract count because there was no evidence of privity of *Page 821 
contract between the parties. Chandler also urges error in the trial court's denial of his motion for a directed verdict as to all three counts on the ground that there was no evidence that he acted in any capacity other than as an agent for Southern Mobile Homes. Finally, Chandler maintains that the trial court erred in refusing to give certain of the defendants' requested charges.
We hold that the trial court erred to reversal in its failure to direct a verdict in favor of the defendants on the second count of the complaint; however, we will write to the other issues raised by appellant Chandler in order to clarify those issues prior to a new trial.
The second count of the complaint appears to allege a cause of action arising from the defendants' failure to deal in good faith as required by Title 7A, Section 1-203, supra. That section states:
 "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."
Failure to act in good faith in the performance or enforcement of contracts or duties arising under Title 7A does not state a claim for which relief may be granted in Alabama. Nor have we been able to discover a jurisdiction which allows recovery of damages under this general provision of the Uniform Commercial Code. There is no indication, either in the text or the comments, that section 1-203 was intended to be remedial rather than directive. We conclude that the second count of Mrs. Hunter's complaint does not state a claim for which relief can be granted.
A Rule 50 motion for directed verdict has been recognized as a proper vehicle for withdrawing a case from the jury in federal practice where the cause of action was groundless and there was a total lack of proof at a trial on the merits.United States v. Winscott, 238 F.2d 519 (7th Cir. 1956). The defendants' motion for directed verdict as to the good faith claim conformed with the requirements of Rule 50 (a), ARCP, in that it was timely made and specific grounds were stated. Furthermore, a Rule 50 (a) motion was proper to remove the groundless claim from the jury's consideration. We find, therefore, that the trial court erred in its refusal to grant this motion.
The trial court's error is reversible under the decision inNashville, C. St. L. Ry. Co. v. Farrell Braley, 14 Ala. App. 380,70 So. 986 (1915). That court held that where a trial court erred in refusing the affirmative charge as to a count not supported by the evidence, and the jury returned a general verdict not stating the count upon which the verdict was based, the case must be reversed. The rationale, which we believe to be sound, is that the jury could have founded its verdict upon the unproven claim. In the case at bar, we cannot say the jury awarded damages to Mrs. Hunter because it believed that the contract warranty had been breached or that false representations were made, and did not believe that the defendants failed to deal with Mrs. Hunter on a good faith basis. Therefore, we hold that the trial court must be reversed for its refusal to direct a verdict in favor of the defendants on the claim that the defendants Gary Chandler and Southern Mobile Homes failed to deal with Mrs. Hunter on a good faith basis as directed by Title 7A, Section 1-203, supra.
The essence of Chandler's motions for directed verdict with regard to the first and third counts of the complaint is that Mrs. Hunter cannot maintain an action based on the contract of sale of the mobile home since she was not a party to the contract and incurred no obligations under the contract. We note in passing that Chandler is mistaken in his ground of objection with regard to the first count, since the first count is in tort for fraudulent representation, not in contract.
It is undisputed that Mrs. Hunter was not herself a party to the contract to purchase the Royal mobile home. Rather, Mrs. Hunter maintains that she is a third party beneficiary to the contract and therefore entitled to bring an action on the contract. She relies on the principle stated in Employers *Page 822 Ins. Co. of Alabama v. Rhodes, 240 Ala. 226, 198 So. 616
(1940):
 "By a long line of decisions in this jurisdiction, as well as elsewhere, the rule is established that one for whose benefit a contract is made may, although not a party to the agreement, and not furnishing the consideration therefor, maintain an action thereon against the promisor. [Citations omitted.]"
This rule was most recently reiterated in Harris v. Board ofWater Sewer Com'rs of City of Mobile, 294 Ala. 606,320 So.2d 624 (1975), with the additional requirement that the third party must have been intended to be directly and not incidentally benefitted.
The evidence clearly reveals that the contract to purchase the Royal mobile home was made for Mrs. Hunter's benefit. Under the terms of a divorce decree, Mr. Truett was to furnish Mrs. Hunter a place to live in lieu of making child support payments. Mr. Truett bought the mobile home for that purpose and no other. He never lived there himself nor had any personal benefit from the ownership of the mobile home. We conclude that under these facts Mrs. Hunter is a third party beneficiary of the contract between Donald E. Truett and Southern Mobile Homes, and that she stands in privity to that contract.
Chandler also says that Mrs. Hunter does not fall within the protection of Title 7A, Section 2-318, Code of Alabama 1940 (Recomp. 1958), which provides:
 "A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."
He points out that Mrs. Hunter has been injured economically, not personally. Title 7A, Section 2-318 has been held to extend a sellers' warranty only to those injured in person by breach of the warranty; there is no right of action on an implied warranty of merchantability of fitness for use where the injury sustained was economic unless there is privity of contract.Harnischfeger Corp. v. Harris, 280 Ala. 93, 190 So.2d 286
(1966); Wear v. Chenault Motor Co., 52 Ala. App. 382,293 So.2d 298, cert. den. 292 Ala. 756, 293 So.2d 301 (1974).
The short answer to Chandler's contentions is that Mrs. Hunter is in privity of contract due to her status as a third party beneficiary. Therefore, Mrs. Hunter does not fall within the reach of the decisions relied upon by Chandler.
Chandler next contends that the trial court erred in refusing his motion for directed verdict as to himself individually on all three counts of the complaint, i.e. fraudulent representation, failure to deal with good faith, and breach of warranty, because he acted only as an agent for Southern Mobile Homes.
As we have already held, the trial court reversibly erred in its failure to direct a verdict in favor of the defendants, including Chandler individually, on the good faith count. However, there was no error on the part of the trial court with regard to its ruling on the first count, fraudulent representation.
It is a well settled rule in this state that a person is liable for the torts which he or she commits, regardless of the capacity in which that person acts. As stated in Finnell v.Pitts, 222 Ala. 290, 132 So. 2, 4 (1930), at 293:
 "When a person commits a tort, it is wholly immaterial upon the question of his liability, whether he was acting officially or personally."
The reason for finding personal liability is that the agent personally has committed a wrong, independent of the principal's wrongdoing. This rule was reiterated inSoutheastern Const. Co. v. Robbins, 248 Ala. 367, 27 So.2d 705
(1946). We conclude, therefore, that the issue of Chandler's personal liability for making the alleged false representations correctly went to the jury.
Chandler also maintains that he should have received a directed verdict on the contract count, since he was acting only *Page 823 
as an agent. He claims to fall within the rule of AlabamaTraction Co. v. Selma Trust Savings Bank, 217 Ala. 653,117 So. 19 (1928), and Gillis v. White, 214 Ala. 22, 106 So. 166
(1925):
 "An agent whose status is understood by the other contracting party, and who has authority to bind his principal, does not bind himself as obligor." 217 Ala. at 656, 117 So. at 21.
However, we cannot say that, in light of more recent decisions, the trial court erred in refusing to direct a verdict in favor of Chandler individually as to the contract count. In Sealy v. McElroy, 288 Ala. 93, 257 So.2d 340 (1972), an agent and his principal were both sued on a breach of warranty claim for false representations made by the agent. The representations made were similar to those involved in the case before us: the agent stated that the house in question was a good house, made of good materials and was of good workmanship, and that the principal would "stand behind" the house. The supreme court held that a judgment against the agent was contrary to law and that only the principal should be held accountable, since the representations made concerning the house were made on behalf of the principal and there was no evidence that the agent intended to bind himself personally on the warranty. The court stated:
 "An agent is presumed to intend to bind his principal only and to incur no personal liability and unless an intention to substitute or superadd his personal liability for or to that of his principal is clearly shown, he will not be bound in his individual capacity." 288 Ala. at 104, 257 So.2d at 350.
In the case at bar there was conflicting evidence whether Mr. Chandler intended to bind himself personally on the warranty. He denied that allegation, but Mrs. Hunter testified that Chandler said he personally backed the mobile homes which he sold. Therefore, the question properly was sent to the jury for resolution. We think the trial court would have erred had it granted Chandler's motion for directed verdict on the contract claim. A directed verdict under Rule 50 should not be granted if there is any conflict in the evidence for the jury to resolve. McLarty v. Wright, 56 Ala. App. 346, 321 So.2d 687
(1975).
The final issue raised by Chandler is that the trial court erred in refusing to give certain written charges requested by the defendants. Rule 51, ARCP, requires:
 "No party may assign as error the giving or failing to give a written instruction . . . unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Nowhere in the record does it appear that counsel for Mr. Chandler objected to the court's failure to give the requested written instructions listed in the stated assignments of error. Thus, Mr. Chandler may not raise that issue on appeal.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.